No. 49,131

State of Kansas, *Plaintiff-Appellee,* v. Danny Ray Buie,
*Defendant-Appellant.*

(575 P.2d 555)

Opinion filed February 25, 1978.

*Cortland E. Berry,* of Kansas City, argued the cause, and *Elmer C. Jackson, Jr.,* of Kansas City, was with him on the brief for the appellant.

*Philip L. Sieve,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

*Per Curiam:* This is a direct appeal from a conviction of murder in the first degree (K.S.A. 21-3401). Because of the issues raised on the appeal it is necessary to set forth the factual circumstances in some detail. The tragic event giving rise to this prosecution took place shortly after 11:00 p.m. on the evening of August 20, 1976, when a cabdriver, Ferry Cathey, was shot and killed in his cab in Kansas City, Kansas. The state's evidence showed that at approximately 11:00 p.m. on the fatal evening a Yellow Cab stopped across the street from Rock's Lunch located near 13th and Wood Avenue in Kansas City. There were no other persons in the cab except the cabdriver, Ferry Cathey. After the cab stopped, the defendant, Danny Ray Buie, got up from where he was sitting near Rock's Lunch and walked over to the parked cab. One witness for the state testified that Buie stood outside the cab talking with the driver for five or more minutes. Another witness testified that Buie immediately got into the cab and the cab remained parked thereafter for six to eight minutes. On the night of the homicide the defendant, a young black male, was wearing

dark pants or jeans and a white tank top or T-shirt with the red number "44" printed on it. Buie was observed entering the cab from the left rear door. Neither of the witnesses observed him carrying any weapon.

The witnesses saw the cab drive away with Buie aboard. A few minutes later the cab was observed at 11th and Walker Avenue, approximately four blocks from the point where defendant had entered the cab. A witness, Viola Simmons, heard two gunshots, and her two sons went outside to investigate. One of the young men heard the two shots and a third shot as he observed the cab coming across the railroad tracks and then crash into the curb. The boys returned inside momentarily and then went outside again. One of the boys saw a young black male wearing a white tank shirt with the number "44" printed on it running away from the cab.

The first person who actually reached the cab was James Bell. He saw the cab go through the intersection, and then heard a crash. As he approached the cab he observed a black person run from the cab. The person was wearing a white T-shirt with either "11" or "44" printed on it. The person did not appear to have a weapon. All of the cab doors were closed when Bell arrived. He could not smell any gunpowder in the cab. He used the cab radio to call for help. The second person to arrive at the cab was Belinda Spencer. As she approached the cab, she saw a black male running from the cab. She observed him running back to the cab and then running away again. He appeared to be wearing dark pants and a white T-shirt. Mrs. Spencer opened the right front door and unsuccessfully attempted to give mouth-to-mouth resuscitation to the cabdriver, who was still alive. Another witness also saw a person running from the cab with the number "44" printed on his shirt.

The police arrived on the scene a few minutes after the crash. There was broken glass on the railroad tracks which the cab had crossed before it struck the curb. The cab had three flat tires. No shell cases were found in or near the cab. The left front window of the cab was broken and glass was found both inside and outside the cab. The cabdriver was found lying in the front seat. His billfold and money were found on his person. No weapons were found in the cab or in the surrounding area. The defendant Buie lived about one and one-half blocks from the scene of the crash.

The final witness for the state was Dr. Angelo Lapi, a consulting pathologist for the Wyandotte county coroner. At the request of the coroner, the doctor performed an autopsy on the body of Ferry Cathey. He testified that the victim suffered six gunshot wounds and one stab wound. The gunshot wounds were as follows:

(1) A wound in the left side of the neck which went straight across from left to right. The bullet emerged just above the right shoulder blade in the back;

(2) A wound in the right chest over the seventh rib on the side just in front of the right arm. This bullet went down into the chest cavity and then penetrated the liver and stomach;

(3) A wound in the right chest in the space between the third and fourth rib. This bullet went straight across, through the lower lobe of the right lung, and entered the heart. From there it went through the left lung and was found in the left armpit;

(4) A wound which entered on the top of the right shoulder and went straight down into the arm. The bullet shattered the bone of the right arm and exited just above the right elbow;

(5) A wound directly into the back of the right arm; and

(6) A wound that entered the back of the right shoulder. The bullet went straight to the right side under the skin.

In addition to the bullet wounds, the doctor found a slight stab wound in the right chest area just under the right arm. Five .38-caliber bullets were recovered by the doctor. Only one of the bullet wounds proved immediately fatal and the doctor testified that there was no way that he could determine when the wounds occurred or their sequence. Following the testimony of Dr. Lapi, the state rested.

For the defense, Etta Goss, a neighbor of Ferry Cathey, testified that on the night in question between 10:30 and 11:00 p.m. she observed Ferry Cathey and another gentleman get into a taxicab and drive off. She could not identify the other man. Rufus King testified that he saw a boy get out of the back of the cab and into the front seat with Ferry Cathey. He could not identify the person. The defendant did not take the stand. Following the completion of the evidence, the defense counsel moved for a judgment of acquittal. The motion was overruled. The jury brought in a verdict of first-degree murder.

The defendant's first point on the appeal is that the trial court erred in overruling the defendant's motion for acquittal on the grounds that there was insufficient evidence to support a conviction of first-degree murder. The defendant concedes that malice may be inferred from the fact that a deadly weapon was used in the homicide. (*State v. Hamilton,* 216 Kan. 559, 534 P.2d 226.) It is defendant's position that there was no evidence of premeditation or deliberation sufficient to sustain a verdict of murder in the first degree. Defendant argues that the attack on Ferry Cathey could have been provoked; that the weapon could have belonged to either the attacker or the victim; and on the evidence presented that there is no way of knowing what happened that night except that one man died from a gunshot wound. The state argues, in substance, that there was sufficient evidence presented from which premeditation and deliberation could have been reasonably inferred by the jury.

Proof of premeditation as an element in first-degree murder was considered by this court in two recent cases. (*State v. Henson,* 221 Kan. 635, 562 P.2d 51; *State v. Hamilton,* supra.) Those two cases hold that the element of premeditation, essential to first degree murder, is not to be inferred from use of a deadly weapon alone, but if, in addition, other circumstances are shown, such as lack of provocation, the defendant's conduct before and after the killing or the dealing of lethal blows after the deceased was rendered helpless, the evidence may be sufficient to support an inference of deliberation and premeditation. Our problem in this case is to determine whether the evidence in the record before us is sufficient to establish a deliberate and premeditated killing. In a prosecution for murder the law does not presume or imply the existence of premeditation and deliberation from any state of circumstances, but it is not necessary that they be established directly. Premeditation and deliberation may be inferred from the established circumstances of the case, provided the inference is a reasonable one. In such case, the jury has the right to make the inference. (*Craft v. State,* 3 Kan. 450.)

The record discloses a number of factual circumstances from which the jury could have reasonably inferred the existence of deliberation and premeditation. There was no evidence whatsoever of provocation. The evidence tended to show that, at the time the cabdriver was shot, he was driving the cab. Witnesses, who

heard shots, thereafter saw the cab cross the railroad tracks and crash into the curb. The fact that the victim was driving a cab at the time he was shot would tend to rebut a claim that he was the aggressor and had threatened his passenger. There were six wounds fired into the victim's body. Each and every one of the bullets was fired from the victim's side or back. As pointed out above, at least two of the bullets were fired down and directly into the top of the victim's right shoulder. Not one of the bullets was fired into the front of the victim's body; this would reasonably support an inference that the cabdriver was not facing his passenger at the time he was shot. There was no evidence that the passenger received even the slightest wound during the fatal trip. Furthermore, the time sequence is of significance. The assailant apparently entered the cab and had a five or six minute conversation with the driver. The cab then took off in the usual way towards some destination. Within a matter of four blocks and a few minutes the shooting took place. Considering all of this evidence together, we believe there is sufficient evidence from which the jury might reasonably have inferred premeditation and deliberation. We have concluded that the trial court did not err in submitting the offense of murder in the first degree to the jury for its determination.

The defendant next maintains that the trial court erred in refusing to give a requested instruction on the lesser offense of voluntary manslaughter (K.S.A. 21-3403). There was no evidence presented either by the state or by the defendant tending to show that the killing was done upon a sudden quarrel or in the heat of passion arising from some provocation. On the basis of the evidentiary record we have concluded that the trial court did not err in failing to instruct the jury on the lesser offense of voluntary manslaughter.

We have also considered the other points raised by the defendant. There was substantial competent evidence to support the verdict of the jury that the defendant was the passenger who shot the cabdriver with a deadly weapon and, as pointed out above, the evidence of deliberation and premeditation was sufficient. We find nothing improper in the prosecutor's argument. We further find that the trial court did not err in admitting into evidence and permitting the jury to examine the photographs of the victim's body taken at the autopsy performed by Dr. Lapi. These photo-

graphs were used by Dr. Lapi for purposes of identification of the victim and to illustrate the wounds which the victim had received at the time of the shooting. The trial court initially decided not to send these exhibits to the jury room. During its deliberations, the jury requested the trial judge for permission to examine the photographs. The photographs did not show the victim's body cut open for purposes of the autopsy. They simply demonstrated the location and the direction of the bullet wounds and were important to assist the jury in determining the manner in which the victim was shot to death.

The judgment of the district court is affirmed.