No. 51,824

STATE OF KANSAS, *Appellee,* v. EDWARD E. CASE, *Appellant.*

(620 P.2d 821)

Opinion filed December 6, 1980.

*Michael C. Helbert,* of Guy & Helbert, of Emporia, argued the cause and was on the brief for appellant.

*Jay W. Vander Velde,* county attorney, argued the cause and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by defendant Edward E. Case from jury convictions of two counts of felony murder (K.S.A. 21-3401), one count of aggravated arson (K.S.A. 21-3719), one count of aggravated burglary (K.S.A. 21-3716), and one count of misdemeanor theft (K.S.A. 1979 Supp. 21-3701).

On the night of June 22, 1978, at approximately ten or eleven o'clock, the defendant and John Lunsford were driving in the Lake Kahola area west of Emporia. After making an unsuccessful attempt to break into some of the cabins around the lake, Case and Lunsford made their way through Dunlap, Kansas, and stopped at the farm residence of Hattie Evelyn Mercer, age 72, and her brother, Frank Peterson, age 76.

Hattie and Frank were apparently awakened by the noise made by the two men as they tried to break into the house. Case and Lunsford saw lights come on in the house so they broke out the front door window, fired a shot from a shotgun through the window and told Mrs. Mercer and Mr. Peterson to stop where they were. Apparently Mr. Peterson didn't heed the command and one of the men shot him in the neck with the shotgun. Mrs. Mercer was tied up with electrical cord and then beaten in an

attempt to force her to tell them where to find money. Case and Lunsford searched the house, finding only a small amount of cash and coins. Mrs. Mercer was then taken into the bedroom and shot in the head with the shotgun. They then set the house on fire.

The two men then drove to Emporia, disposing of various articles stolen from the house along the way. The coins, totaling $31.68, were exchanged at an Emporia bank for paper currency the morning of the 23rd and the shotgun was thrown into the Neosho River as Case and Lunsford drove out of town on their way to New Mexico.

On June 30, 1978, Case was arrested for shooting a hitchhiker and charged with aggravated battery with a firearm in Valencia County, New Mexico. Kansas authorities were notified of the arrest and on July 1, 1978, Case was interrogated by law enforcement officers from the State of Kansas. Case was charged in Kansas on July 3, 1978, and was served with a copy of the warrant that month in New Mexico. Case pled guilty to the aggravated battery charge in Valencia County, New Mexico, and was returned to Kansas in March of 1979 for trial.

Numerous points are raised which appellant contends denied him a fair and impartial trial. The first is alleged error by the court in denying a motion for a change of venue. The crimes were widely publicized in the Emporia area and were the subject of numerous newspaper articles and radio and television broadcasts covering the period of time from June 23, 1978, until the trial of the case in December of 1979. The motion for change of venue was heard by the court on October 29th and November 1, 1979. Copies of newspaper articles were introduced in evidence along with transcripts of radio broadcasts together with the results of a telephone survey conducted in the Emporia area by employees of defendant's counsel. Defendant's expert who testified in support of the telephone poll acknowledged that there were numerous flaws in the methodology used in conducting the poll. When asked to ignore all the various deficiencies apparent in the taking of the poll, the expert admitted that in his opinion more than 40 impartial jurors could be selected from a panel of 160 persons.

The law concerning a change of venue in a criminal action has been clearly set out in a number of cases. In *State v. May*, 227 Kan. 393, 394-395, 607 P.2d 72 (1980), this court summed up the existing law as follows:

"We set forth the law on change of venue in *State v. Porter,* 223 Kan. 114, 117, 574 P.2d 187 (1977), where we stated:

'A change of venue in a criminal case lies within the sound discretion of the trial court. [Citations omitted.] The burden of proof is cast upon defendant to show prejudice in the community which will prevent him from obtaining a fair and impartial trial. [Citations omitted.] Media publicity alone has never established prejudice per se. Defendant must show prejudice has reached the community to the degree it is impossible to get an impartial jury.' "

See *State v. Foy,* 224 Kan. 558, 582 P.2d 281 (1978); *State v. Gilder,* 223 Kan. 220, 222-223, 574 P.2d 196 (1977).

In *State v. McLaughlin,* 207 Kan. 594, 485 P.2d 1360 (1971), we stated:

"Furthermore, prejudice must be established 'not as a matter of speculation but as a demonstrable reality.' " p. 598.

A review of the articles and radio news reports placed in evidence reveals they were factual, in temperate language and did not specifically draw conclusions of guilt. As appellee points out, the articles appeared during a period spanning over a year from June 23, 1978, until September 7, 1979. In addition, the telephone poll conducted by defense counsel's employees took place in July while the actual trial did not take place until December.

After hearing the testimony and examining the evidence, the trial judge was of the opinion the extent of the publicity about the crimes was not such that defendant would be denied a fair trial in Lyon County. No actual prejudice was shown and we find no abuse of discretion by the trial court.

Appellant next contends that the trial court erred in not suppressing two statements he made to the Kansas authorities in New Mexico on July 1, 1978. He argues that his constitutional rights were violated when the Kansas authorities took his statement on July 1 after he had repeatedly asked the New Mexico authorities on June 30th for an attorney. It is undisputed that Case requested the New Mexico authorities to let him call an attorney. These requests were denied and New Mexico did not get around to appointing an attorney until the latter part of July, 1978. Case gave written and oral statements to the Kansas police officers on July 1, 1978. A *Jackson v. Denno* hearing was held on the admissibility of the statements and the court found the statements were freely and voluntarily given after Case had been fully advised of his rights under *Miranda.* While Case contends he was physically abused by the New Mexico authorities, no evidence,

other than that of the defendant, supported the allegations. The Kansas officers, Lyon County Sheriff Dan Andrews, and K.B.I. agent Don Windsor, along with a New Mexico sheriff's officer testified at the hearing. The hearing extended over portions of three different days, included the testimony of four witnesses along with numerous exhibits, and the transcript of the *Jackson v. Denno* hearing covers 216 pages. It should also be pointed out that the officer's report which related the oral statement of Case was introduced at trial by the defendant and not by the State.

Appellant makes much of the fact that he had requested an attorney from the New Mexico authorities on June 30, 1978, and that he asked for an attorney on numerous occasions after July 1, 1978. Whatever may be the merit of appellant's arguments insofar as the New Mexico proceedings are concerned, it is clear that he was advised of his rights by Kansas authorities before they proceeded to interview him. They knew nothing of the previous requests and Case gave his statements voluntarily. Case voluntarily and knowingly waived his right to remain silent and to be represented by counsel when he gave the statements to the Kansas authorities. Case argues that additional statements were taken from him by New Mexico authorities subsequent to July 1, 1978, and prior to the time an attorney was finally appointed. The State disclaimed any knowledge of any statements other than those of July 1st and no attempt was made to use any other statements. Appellant's second point lacks merit.

Next appellant argues the trial judge interfered with defense counsel's attempt to question the jury panel during voir dire. Appellant also contends the court committed error in not sustaining his challenges for cause, that the court went too far in questioning individual panel members who appeared to have some bias or prejudice adverse to defendant, and that a motion for mistrial should have been sustained. K.S.A. 22-3410 sets forth the various grounds upon which a potential juror may be challenged for cause. In the instant case most of the panel members had some prior knowledge of the crimes due to the widespread publicity. Prior to counsel's examination of the jury panel the trial court undertook to question the panel as a whole as to their knowledge of the crimes, any preconceived opinions, any relationships with the victims, the parties, counsel and possible witnesses. As a result the court, on its own volition, struck 13 persons from the

panel prior to any questioning by counsel. When the time came to select a panel for alternate jurors the court struck 2 out of 8 individuals in the same manner. After the county attorney had completed his examination and passed the panel for cause, defense counsel commenced a long, exhaustive and sometimes confusing interrogation of each member of the jury panel. During the process he challenged four members of the panel for cause and the judge, after further questioning, overruled three of the challenges and sustained the other. Prior to each ruling the trial judge undertook to question the potential jurors at some length and in a somewhat vigorous fashion.

K.S.A. 22-3408(3) provides:

"(3) The prosecuting attorney and the defendant or his attorney shall conduct the examination of prospective jurors. The court may conduct an additional examination. The court may limit the examination by the defendant, his attorney or the prosecuting attorney if the court believes such examination to be harassment, is causing unnecessary delay or serves no useful purpose."

K.S.A. 22-3410 states in part:

"(1) Each party may challenge any prospective juror for cause. *Challenges for cause shall be tried by the court.*" (Emphasis added.)

Challenges for cause are to be tried to the trial court and decided in the discretion of the trial court. *State v. Nix,* 215 Kan. 880, 529 P.2d 147 (1974). It is clear that the trial court is in a better position than this court to view the demeanor of prospective jurors as they are questioned. *State v. Carpenter,* 215 Kan. 573, 577, 527 P.2d 1333 (1974). In *State v. Sanders,* 223 Kan. 273, 275-276, 574 P.2d 559 (1977), this court stated:

"Under K.S.A. 22-3410(2)(*i*), before a juror should be excused for cause the court must determine that the juror's state of mind with reference to the case or any of the parties is such there is a doubt that the juror can act impartially and without prejudice to the substantial rights of any party.

"Whether a prospective juror is qualified to sit in the trial of a case is a question for determination by the trial court and its ruling will not be disturbed unless it is clearly erroneous or there has been an abuse of discretion. (*State v. Amodei,* 222 Kan. 140, Syl. ¶ 4, 563 P.2d 440.)"

Following voir dire, defense counsel stated:

"At this point, Your Honor, I feel that subject to a motion that we will have and subject to the challenges that have been stated and the objections that have been noted, we will pass this panel for cause."

Later, in chambers, he moved that four additional members of the

panel be stricken for cause and, when overruled, that the court declare a mistrial. The court refused to consider additional challenges for cause inasmuch as the voir dire had been completed and the panel excused during the time counsel were to exercise their peremptory challenges. It was the opinion of the trial court that a challenge for cause should be made during voir dire so the court can properly fulfill its duties to inquire of the challenged individual and determine whether he or she should be excused as required by the statute. We agree. Each counsel had 12 peremptory challenges. Appellant's challenges to 3 potential jurors during voir dire were overruled and he attempted to object to 4 more following voir dire. None of these seven individuals sat on the jury which was ultimately selected to try the case and no actual prejudice has been shown. *State v. Sagebiel,* 206 Kan. 482, Syl. ¶ 1, 480 P.2d 44 (1971). While a close review of the record would indicate that perhaps some of the panel members who were challenged for cause should have been excused by the trial court, we cannot say, in the absence of a showing of actual prejudice, that the court abused its discretion in its rulings upon the challenges or in its examination of the panel and its members.

Appellant next argues that his motion to dismiss the charge of aggravated arson should have been dismissed because both of the victims were dead before the house was set on fire. It is argued that under such circumstances there was no "human being" in the house as required by K.S.A. 21-3719. We find no merit in such an argument. In addition there was evidence that Frank Peterson may have been still alive when the fire was set.

Next appellant argues that it was error for the trial court to refuse to give requested instructions on lesser included offenses. It is contended that the underlying felony, aggravated burglary, is a specific intent crime and as appellant was too intoxicated from liquor and drugs to be able to form a specific intent, instructions on lesser degrees of the crimes charged should have been given. It is true that burglary and aggravated burglary both require that the element of specific intent be proved. *State v. Finley,* 208 Kan. 49, 56, 490 P.2d 630 (1971).

K.S.A. 21-3208(2) provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

It is clear that evidence of voluntary intoxication is relevant when a defendant is charged with a specific intent crime. Appellant did not testify and the only evidence of intoxication was in the statements given the Kansas authorities in New Mexico. The statements were quite detailed and specific about what took place on the night of June 22nd and the early morning of June 23, 1978. Appellant denied he was involved and asserted his cohort Lunsford broke into the house, killed the old people and set the house on fire. Appellant, according to his version, was an innocent bystander who merely drove the car, held the shotgun while Lunsford beat Mrs. Mercer and shared in the loot, meager as it was. On the other hand, Lunsford testified and placed all of the blame on Case. Lunsford also testified that although the two had been drinking they had not had any alcoholic beverages or drugs for 12 hours prior to committing the crimes.

In *State v. Marks,* 226 Kan. 704, 713, 602 P.2d 1344 (1979), this court held:

"Under K.S.A. 21-3107(3), a trial court is required to instruct on any lesser crime when there is evidence introduced under which the defendant might be reasonably convicted of the lesser offense. Such an instruction is required even though such instructions have not been requested or have been objected to. Ordinarily, in a felony-murder case, where the evidence of the commission of the felony is clear and uncontroverted, no instruction on lesser degrees of homicide should be given. *State v. Bradford,* 219 Kan. 336, 342, 548 P.2d 812 (1976). Where, however, the evidence of the underlying felony is weak or inconclusive, instructions on lesser or included offenses should be given if the evidence would support a conviction on such lesser crimes. *State v. Foy,* 224 Kan. 558, 582 P.2d 281 (1978)."

The evidence of the underlying felony of aggravated burglary was certainly not weak or inconclusive. We find no error in the failure to give lesser included instructions based upon appellant's claimed intoxication.

Finally, appellant argues the court committed error in its sentencing. The State asked for the imposition of the habitual criminal act based upon four prior felony convictions. Appellant contends the court did not follow the requirements of K.S.A. 21-4606 which provides criteria for fixing minimum terms. The record does not support the argument as the court fully complied with the statute. Appellant was sentenced to life in prison for each murder conviction, 30 years to life on the aggravated arson conviction, 10 to 30 years for aggravated burglary and one year for misdemeanor theft. The sentences are to run consecutively. In

*State v. Buckner,* 223 Kan. 138, Syl. ¶ 6, 574 P.2d 918 (1977), this court held:

"When a sentence is fixed by the trial court, within permissible limits of the applicable statutes, the sentence is not erroneous and in the absence of special circumstances showing an abuse of judicial discretion will not be disturbed on appeal."

The sentences imposed, while lengthy, are within the limits set by the statutes and considering the heinous nature and the severity of the crimes, we cannot say the trial court abused its discretion.

A careful review of the entire record and all points raised on appeal fails to disclose that appellant was deprived of a fair and impartial trial.

The judgment is affirmed.