No. 54,143

STATE OF KANSAS, *Appellee,* v. GEORGE ERIC RAINEY, *Appellant.*

(660 P.2d 544)

Opinion filed March 26, 1983.

*Ray L. Connell,* of Connell & Connell, of El Dorado, was on the brief for appellant.

*William P. Ronan,* county attorney, argued the cause, and *Norman G. Manley,* special prosecutor, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: George Eric Rainey was convicted, upon jury trial in Butler County District Court, of the first-degree murder of Ferdinand "Bud" Pribbenow, a trooper on the Kansas Highway Patrol. Rainey appeals, claiming that the trial court erred in denying his motion for a change of venue, in failing to sustain his challenges of three jurors for cause, in permitting the State to introduce in evidence certain "gruesome" photographs of the deceased, in allowing a tape recording and a transcript thereof to be received in evidence, in limiting the testimony of a defense witness, in refusing to instruct the jury on voluntary manslaughter, involuntary manslaughter and self-defense, and in giving the jury an instruction on motive.

About 8:00 o'clock p.m. on July 11, 1981, Trooper "Bud" Pribbenow, a twenty-two-year veteran of the Kansas Highway

Patrol, was northbound on the Kansas Turnpike between El Dorado and Wichita, Kansas. He observed a speeding Oldsmobile in the southbound lane, crossed the median, and gave chase. Pribbenow, by radio, stated that he had spotted a car going 98 miles per hour; he gave his location and the Wisconsin tag number of the speeding car, and said that it was occupied by a lone black male. Nothing further was heard from the trooper. Several southbound travellers observed the speeding Oldsmobile and the trooper's pursuit. Both cars sped out of the travellers' fields of vision. A few miles later, the travellers reached the patrol car and observed the trooper lying in the grass at the right of his car; he had been shot through the neck and the chest. One of the travellers broadcast that information on the trooper's radio. Another, a physician, attempted to help Pribbenow, but was unable to assist the mortally wounded trooper. The Oldsmobile was spotted by other law enforcement officers as it approached Wichita; it sped through the toll booth at the east Wichita exit, proceeded west on Kellogg Street at a high rate of speed, and was finally stopped by traffic at Rock Road. The driver of the Oldsmobile, later identified as George Eric Rainey, fired out the window of the car at police officers and a gun battle ensued. Rainey was shot several times, disarmed, arrested, and taken to a Wichita hospital. Police officers found two .357-caliber revolvers on Rainey; one of those was later identified as belonging to Trooper Pribbenow. All of the radio communications noted above were automatically tape recorded; a copy of the tape recording and a transcript of those communications were received in evidence at trial.

Before the trial defendant moved for a change of venue and appended to his motion various press clippings which were published at or about the time of the homicide. He offered no affidavits and no testimony in support of the motion. We have recently and repeatedly held that one moving for a change of venue has the burden of establishing prejudice, and that specific facts and circumstances must be established which indicate that it will be practically impossible to obtain an impartial jury in the original county to try the case. *State v. Salem,* 230 Kan. 341, 343, 634 P.2d 1109 (1981). As we said in *State v. Myrick & Nelms,* 228 Kan. 406, 417, 616 P.2d 1066 (1980):

"The murder of [a highway patrol trooper] evoked a feeling of outrage all over

the State of Kansas. The press, radio and TV responded in kind. The act was shocking and was resented by people everywhere. Those facts alone, however, do not entitle a defendant to a change of venue."

Also, as we noted in *Myrick & Nelms,* a change of venue in a criminal case lies within the sound discretion of the trial court. The defendant in this case, like Myrick and Nelms, failed to show prejudice sufficient to make it reasonably certain that he could not receive a fair trial. The district court did not abuse its discretion in denying the motion for change of venue.

Defendant claims that the trial court committed prejudicial error in overruling his challenges for cause to jurors Leonard, Hurd and Winzer. Challenges for cause are to be tried by the trial court. K.S.A. 22-3410.

" 'Whether a prospective juror is qualified to sit in the trial of a case is a question for determination by the trial court and its ruling will not be disturbed unless it is clearly erroneous or there has been an abuse of discretion. [Citation omitted.]' " *State v. Folkerts,* 229 Kan. 608, 617, 629 P.2d 173 (1981).

Mrs. Winzer did not sit as a juror during the trial and thus any error in overruling a challenge to her for cause is not ground for reversal, no prejudice being shown. *State v. Case,* 228 Kan. 733, 738, 620 P.2d 821 (1980); *State v. Sagebiel,* 206 Kan. 482, Syl. ¶ 1, 480 P.2d 44 (1971). We have carefully examined the transcript of the voir dire, and find that both Mr. Leonard and Mrs. Hurd indicated that they understood the presumption of innocence and that they would follow the instructions of the court. Both believed that they could sit as fair and impartial jurors in the trial of the case. We conclude that the trial court did not err in overruling defendant's challenges of these jurors for cause.

The photographs which defendant claims were gruesome and prejudicial are simply photographs of the scene of the crime, with the trooper's body shown as it was found. They were utilized by several prosecution witnesses in their testimony, and they were identified as fair and accurate representations of the scene. They were not the type of photograph which we have found to be unduly gruesome; they were relevant to matters in issue such as the manner and cause of death, and were an aid in an understanding of the evidence. Though the defendant may characterize them as gruesome and inflammatory, we hold that they were admissible and were properly received in evidence. See *State v. Salem,* 230 Kan. at 347.

We turn next to defendant's claim of error regarding the Highway Patrol tape recording and the transcript thereof which were admitted into evidence. The State laid a careful foundation for these items. The dispatcher on duty on the night of the homicide identified the master tape and testified that it had not been altered to her knowledge. The chief dispatcher testified that all highway patrol transmissions are automatically recorded; that he has custody of the master tapes; and he also identified the master tape and a smaller cassette tape which he recorded from the master tape. He identified the transcript, and testified that the cassette and the transcript were accurate reproductions of the original tape. Another witness testified that he had muted the background noise on the cassette so that the recorded conversation would be more readily understandable, but that the muting did not in any way alter the conversations. Another trooper testified as to the meaning of patrol code numbers mentioned on the tape. Finally, three of the persons whose voices were recorded were present and testified in person at the trial.

The trial judge ruled that the tapes were admissible under the business records exception to the hearsay rule, codified as K.S.A. 1982 Supp. 60-460(m), which reads:

"60-460. . . . Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

. . . . .

"(m) . . . . Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that (1) they were made in the regular course of a business at or about the time of the act, condition or event recorded and (2) the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness."

The statute uses the term "writings," but that term has generally been held to be broad enough to include sound recordings. See 3 Jones on Evidence § 17.2 (6th ed. 1972). The exception applies to records kept by public authorities. See 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-460(m), p. 262 et seq. (1979). The recording was made as a part of the patrol's usual and ordinary business. The tape recordings were made at virtually the same time that the act, condition or event discussed was occurring and while the speakers were observing the events narrated or described. The sources of information from which the tape recording was made,

and the method and circumstances of the making of the tape were such as to indicate its trustworthiness. We find that the tape recording was admissible under K.S.A. 1982 Supp. 60-460(*m*). The persons speaking during the radio transmissions were for the most part under stress caused by their perception of the events; there was no incentive to falsify or distort. We hold thus that the tape recording was also admissible under K.S.A. 1982 Supp. 60-460(*d*), which reads:

"A statement which the judge finds was made (1) while the declarant was perceiving the event or condition which the statement narrates, describes or explains, (2) while the declarant was under the stress of a nervous excitement caused by such perception or (3) if the declarant is unavailable as a witness, by the declarant at a time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort."

The tape recording was thus properly received in evidence. The transcript of the tape, being merely a written statement of the conversations contained therein, and the cassette re-recording are not challenged as to accuracy. Jurors, witnesses, court and counsel may refer back to portions of a written statement more easily than to conversations contained in a tape recording. The writing was unquestionably helpful. The tape itself was an official record; secondary evidence as to the contents of official records is admissible. K.S.A. 60-467. We find no error in the admission of the written transcript or the cassette tape.

The defendant proffered certain testimony regarding his involvement in the voodoo religion, part of which he wished to present through the witness Donald Mackaffee. Counsel stated that had the court not sustained the objection, Mr. Mackaffee would have testified that sometime earlier in 1981 he saw the defendant when he was in a trance-like state; that the defendant at that time said that a girl had tied dolls together and she wanted the defendant to marry her. Defendant asked Mackaffee to kill him, saying that he didn't want to marry the girl and he didn't have any control over that. Later, in June 1981, the defendant came to Mackaffee's house and said that he (the defendant) was controlled, possessed to kill Mackaffee. The defendant did not testify.

The trooper's death occurred on Saturday, July 11. On that day the defendant was driving his mother's car. Defendant's sister,

Jacqueline L. Rainey, testified that on Friday night, July 10, the defendant asked her for the keys to her mother's car. She asked if her mother had given permission, and he replied that he had already checked it out with her. He was not then in a trance or any kind of a "far-out" state, there was no mention of being under a voodoo spell of any kind, and so far as she knew her brother had not had any psychological problems. Against this background, the trial court sustained an objection by the prosecution to the proffered testimony on the grounds that the testimony was hearsay and that it was too remote to be of any value in determining the defendant's state of mind at the time of the homicide.

It has long been the rule in this state that the exclusion of evidence on the ground of remoteness rests in the sound discretion of the trial court, and that ruling will not be reversed on appeal unless it appears that the ruling prejudiced substantial rights of the accused. *State v. Fenton,* 228 Kan. 658, 668, 620 P.2d 813 (1980); *State v. Betts,* 214 Kan. 271, 519 P.2d 655 (1974); *State v. Calvert,* 211 Kan. 174, 505 P.2d 1110 (1973); *State v. Schuman,* 151 Kan. 749, 100 P.2d 706 (1940). In the case at hand, evidence that the defendant was under a voodoo spell a month or more before the occurrence on July 11, 1981, would seem to have little probative value as regards the determination of whether he was under such a spell at the critical time. We find nothing in the record to indicate that the defendant's substantial rights were prejudiced and we conclude that the trial court did not err in excluding the proffered evidence.

Next, we turn to the trial court's instructions. The defendant complains of the court's failure to instruct on the crimes of voluntary and involuntary manslaughter. A trial court is required to instruct on lesser included crimes only when there is evidence upon which a defendant might reasonably have been convicted of lesser crimes. K.S.A. 21-3107(3); *State v. Johnson & Underwood,* 230 Kan. 309, 634 P.2d 1095 (1981); *State v. Prince,* 227 Kan. 137, Syl. ¶ 1, 605 P.2d 563 (1980). Here the defendant's case consisted of character evidence, evidence that he was "possessed," and evidence of insanity. There was not a shred of evidence which would even support an inference that the crime committed was voluntary or involuntary manslaughter.

Similarly, the trial court's obligation to instruct on self-defense

is premised upon the supposition that there is some evidence presented at trial which would support that theory. There was absolutely no evidence presented at this trial which would indicate self-defense. The trial court did not err in refusing to give instructions on voluntary manslaughter, involuntary manslaughter, or self-defense.

Finally, defendant objects to the trial court's instruction on motive. The trial court's instructions were not made a part of the record on appeal, but this particular instruction is reproduced in the State's brief. The instruction appears to accurately state the law, defendant has shown no prejudice, and we find no error.

We have carefully considered all points raised, all arguments made, and all authorities cited by the defendant and find no prejudicial error. The judgment is affirmed.