No. 71,975

STATE OF KANSAS, *Appellee,* v. LYLE C. SANDERS, *Appellant.*

(904 P.2d 951)

Opinion filed October 27, 1995.

*Rick Kittel*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appeals his jury convictions for first-degree premeditated murder (K.S.A. 1992 Supp. 21-3401) and aggravated weapons violation (K.S.A. 21-4202) and the sentence imposed. Defendant claims the district judge (1) failed to instruct on the lesser offenses of second-degree murder and unlawful use of a weapon; (2) failed to grant a motion for judgment of acquittal of the aggravated weapons charge; (3) improperly allowed testimony of a witness who had violated the court sequestration order; (4) improperly admitted hearsay statements; and (5) imposed an illegal sentence.

At approximately 6:30 a.m. on February 7, 1993, Latonya Edmond's 5-year-old nephew, Shawn, discovered Latonya lying on her living room floor in a pool of blood. A ball cap, black and white with a red stop sign in the middle, was underneath Latonya's left hand. Shawn telephoned Latonya's mother. When she arrived, the front door of the house was not locked. Emergency personnel were called. Latonya died before they arrived. Officers noted that the utensil drawer in the kitchen was open.

Latonya had injuries to both eyes, her mouth, and her chest. These injuries had been caused by kicking or punching. Latonya would have been rendered unconscious or stunned by the blow to her right eye. On the right side of Latonya's neck were three or four slight cuts and one deep cut which was approximately 3 inches long and passed through the right carotid artery and jugular vein.

The deep cut caused Latonya's death from external bleeding and appeared to have been made with a serrated-edged instrument such as a serrated knife or pinking shears. The cuts were inflicted while Latonya was lying on the floor.

The investigation by the police revealed that on the day before her death, Latonya visited her husband, Otha Edmond, who was imprisoned in Winfield, Kansas. She arrived at 1:00 p.m and returned to Wichita around 4:00 p.m. Between 5:30 and 6:00 p.m. Latonya's sister-in-law, Pam Reed, drove Latonya home. As Pam was leaving, she saw Lyle Sanders near Latonya's house. Sanders explained to Pam that his car was running hot and he was going to get some water at Latonya's. Sanders was wearing a ball cap similar to the one found under Latonya's left hand after her death. When Pam saw Sanders around 9:00 that evening, he was wearing the cap.

Latonya had two telephone conversations with her husband. The first conversation occurred around 6:00 p.m. She told Otha that Sanders was sitting in front of her house. Sanders had been married to Latonya's husband's sister. A friend heard Latonya yell out the front door to Sanders that Otha said Sanders was not to come back to his (Otha's) house. Latonya spoke with Otha again around 10:00 p.m. At 11:00 p.m., Latonya spoke with her mother and sisters on the telephone. Pam called Latonya no later than 2:30 a.m. They spoke for 10 or 15 minutes. Pam was the last person to speak with Latonya.

The police interviewed Otha, who informed authorities that his wife had told him Sanders was making sexual advances toward her. Otha stated that his home telephone number had been changed to an unlisted number because Sanders was repeatedly calling the house. In addition, Pam informed the police that a couple of days before her death Latonya had told her (Pam) that Sanders was saying she (Latonya) was his "woman."

DNA testing of the clothes Sanders was wearing on February 6 revealed no blood which could have been Latonya's. Two small amounts of blood found on the eject button of the cassette player in Sanders' car were tested. One blood type was consistent with Latonya's type, found in approximately 3% of the black population.

The other was consistent with Sanders' type. At trial, Sanders presented testimony which indicated that the DNA testing procedures were flawed because of contamination and because the examiner failed to follow proper protocol.

Sanders voluntarily spoke with police on February 7, 1993. He stated that he purchased a $10 rock of crack cocaine from Latonya and a second rock of crack at Martha Edmond's house. Sanders said that he had gone to Latonya's house before 5:30 p.m. to use the bathroom and borrow a screwdriver from her kitchen drawer to reconnect his stereo. Sanders denied that he had returned to Latonya's that night.

Sanders asserted that he had spent the evening at the house of his girlfriend, Queenie Moore. He left Queenie's several times to go to Moses Moore's house, a church, Martha Edmond's house, and his parents' house. Queenie had returned home at 11:00 p.m. From 11:15 p.m. to 12:15 a.m. Sanders was at Moses' picking up Queenie's daughter. He then studied for his Sunday School lesson. At 1:30 a.m. Sanders went to sleep on the floor of Queenie's bedroom.

At trial, the defendant's mother, father, and other witnesses corroborated the defendant's statement to police. Queenie testified that Sanders went to bed at 1:30 a.m. in her bedroom. The defendant slept on the floor because Queenie's daughter was sleeping in the bed with her. Queenie asserted that she would have heard the defendant if he had left the room that night because the door pulls the carpet when it is opened. The defendant's investigator also testified that when the door to Queenie's bedroom is moved, it makes a loud noise because of the carpet.

Sanders testified as to his activities the night of Latonya's death. He stated that he stopped by Latonya's house around 6:00 p.m. on his way to his parents' house. Sanders testified that he always stopped by Latonya's to check on her when he was in the area. Sanders stated that he used her bathroom and borrowed a screwdriver from the kitchen drawer to reconnect his stereo. Sanders admitted he was wearing a black and white ball cap with a red stop sign in the center during the day. After leaving Latonya's, Sanders had realized that he did not have the cap. He thought he had left

it at Queenie's or in his car. Sanders denied telling the police that he had purchased cocaine that night. He testified that he went to sleep in Queenie's room. He woke up early in the morning and got up around 8:30 a.m. Sanders denied ever going back to Latonya's house after 6 p.m., and he denied that he killed Latonya.

The jury found Sanders guilty of first-degree premeditated murder and aggravated weapons violation. Sanders was sentenced to consecutive terms of life for the murder conviction and 1 to 5 years for the aggravated weapons conviction. The life sentence for murder was tripled under the Habitual Criminal Act. The defendant appeals.

## SECOND-DEGREE MURDER

The defendant first claims that the trial court erred in failing to instruct the jury on the offense of second-degree murder as a lesser included offense of first-degree murder.

K.S.A. 21-3107(3) requires the trial court to instruct the jury not only as to the crime charged but also as to all lesser included crimes of which the accused might be found guilty. The statutory duty to instruct on lesser included offenses is an affirmative duty of the trial court and applies whether or not the defendant requests the instructions. *State v. Bowman*, 252 Kan. 883, 892, 850 P.2d 236 (1993).

An instruction on a lesser included offense is required if there is substantial evidence upon which the defendant might reasonably have been convicted of the lesser offense. *State v. Mitchell*, 234 Kan. 185, 189, 672 P.2d 1 (1983). However, the duty to instruct on a lesser included offense "does not arise unless there is evidence supporting the lesser offense." *State v. Patterson*, 243 Kan. 262, 267, 755 P.2d 551 (1988). The evidence supporting the lesser included offense must be viewed in the light most favorable to the defendant. The evidence may be inconclusive, unsatisfactory, and weak and consist only of the defendant's testimony. *State v. Coleman*, 253 Kan. 335, 352, 856 P.2d 121 (1993). There is some weighing of evidence in this analysis, but the weighing of evidence is not a retrial of the case. *State v. Dixon*, 252 Kan. 39, 43, 843 P.2d 182 (1992).

First-degree premeditated murder is the killing of a person committed maliciously, willfully, deliberately, and with premeditation. K.S.A. 1992 Supp. 21-3401. Second-degree murder, a lesser offense of first-degree murder, is the malicious killing of a human being committed without deliberation or premeditation. K.S.A. 21-3402; see *State v. Seelke*, 221 Kan. 672, 675, 561 P.2d 869 (1977).

At the close of the evidence the trial judge determined that he had no duty to instruct the jury on second-degree murder as a lesser included offense of premeditated first-degree murder because there was no evidence to support the lesser offense. In reaching this conclusion, the judge reasoned that the nature and number of the wounds inflicted on the victim before the fatal cut required deliberation or premeditation by the perpetrator and that there was not substantial evidence upon which the defendant might reasonably have been convicted of the lesser included offense, second-degree murder.

To support the judge's finding that an instruction on second-degree murder was not required because the killing was premeditated, the State points to a variety of circumstances which include the nature of the weapon used, the lack of provocation, the defendant's conduct before the killing, and declarations made by the defendant and the victim prior to the killing. It argues that the infliction of lethal cuts after the victim had been rendered helpless shows that the killing was deliberate and premeditated. See *State v. Henson*, 221 Kan. 635, 639, 562 P.2d 51 (1977).

In a prosecution for murder, the law does not presume the existence of premeditation or deliberation from any state of circumstances. It is not necessary that a premeditated intent to kill be established directly. Premeditation and deliberation may be inferred from the established circumstances, provided the inference is a reasonable one. If an inference is a reasonable one, the jury has the right to make the inference. *State v. Buie*, 223 Kan. 594, 597, 575 P.2d 555 (1978); see *State v. Phillips*, 252 Kan. 937, 939-40, 850 P.2d 877 (1993). The sufficiency of proof of premeditation as an element in first-degree murder has been considered by this court. We have held that the element of premeditation is not inferred from use of a deadly weapon alone, but if additional circum-

stances are shown, such as lack of provocation, the defendant's conduct before and after the killing, or the striking of a lethal blow after the deceased was rendered helpless, the evidence may be sufficient to support an inference of premeditation. See *Henson*, 221 Kan. at 639; *State v. Hamilton*, 216 Kan. 559, 534 P.2d 226 (1975).

In *Henson, Hamilton,* and *Phillips*, the issue was not whether a lesser included instruction to first-degree premeditated murder was required but whether the evidence was sufficient to support an inference of premeditation. The question in this appeal, conversely, is not whether there was sufficient evidence of premeditation but whether there was sufficient evidence to require the trial judge to instruct on the lesser included offense of second-degree murder. These are different questions. The sufficiency of an inference of premeditation is not conclusive in determining whether the evidence was sufficient to require a lesser included offense instruction.

Sanders asserts that the trial judge's conclusion that the evidence indicated the killing was premeditated is incorrect because there were no witnesses to the killing and it is unknown how or why the victim was killed. Sanders observes that there was no evidence he exhibited animosity toward Latonya or wanted to harm her. Sanders points out that no murder weapon was found at the scene. To support his claim that a lesser included offense instruction was required, Sanders argues that if the murder weapon had been taken from the open kitchen drawer, as claimed by the prosecution, the killer did not take the murder weapon to Latonya's. Sanders concludes this scenario shows that the killing was spontaneous rather than deliberate and premeditated. Sanders reasons that under these facts, an instruction on second-degree murder was required because there was substantial evidence which implied that the killing was not deliberate or premeditated.

The evidence at trial showed that Latonya was killed late at night in her own home. There was no sign of forced entry into Latonya's house, although she routinely kept the door locked. Latonya did not have defensive injuries, nor were there other signs of a struggle. There was no evidence of provocation. Latonya was rendered help-

less, either unconscious or stunned, by a blow to her face. Blows to the head and chest and several superficial cuts occurred before the lethal wound was inflicted. If the murder weapon was taken from the kitchen drawer, the jury could infer that the defendant did not premeditate the killing before going to Latonya's house. While premeditation is one inference which may be drawn from the evidence, Sanders is correct in asserting the same evidence also creates the opposite inference that there was no deliberation and premeditation.

In a prosecution for premeditated first-degree murder, where there is no direct evidence as to the circumstances of the killing and the evidence introduced against the defendant is wholly circumstantial and open to the inference by the jury that the offense committed may have been second-degree murder, it is the duty of the court to instruct the jury respecting that degree of homicide. It is the province of the jury, and not the court, to determine the degree of homicide, if any, of which the defendant is guilty. *State v. Johnson*, 220 Kan. 720, Syl. ¶ 1, 556 P.2d 168 (1976). See *State v. McClanahan*, 254 Kan. 104, 865 P.2d 1021 (1993), *Dixon*, 252 Kan. 39, and *Johnson*, 220 Kan. 720, where this court reversed convictions of first-degree murder or attempted first-degree murder because the trial court failed or refused to instruct on lesser included offenses.

An instruction on second-degree murder was required here because the evidence at trial did not exclude a theory of guilt on the lesser offense. The trial court erred in failing to so instruct the jury.

We must reverse Sanders' conviction for first-degree murder. Under the unique circumstances of this case, we must also reverse his conviction for aggravated weapons violation. That conviction is based on the jury's finding that Sanders, as Latonya's killer, possessed a knife. Because of the possibility that Sanders may be acquitted of the killing upon retrial, the conviction for aggravated weapons violation cannot stand. We remand the case to the trial court for a retrial on both charges.

Because the matter will be retried, we need not reach the other issues raised by Sanders except two questions which must be answered for the new trial: (1) Was the trial court required to instruct

the jury on the lesser included offense of unlawful use of a weapon? (2) Were hearsay statements improperly admitted?

## UNLAWFUL USE OF WEAPONS

Aggravated weapons violation is the unlawful use of weapons by a person who within 5 years before the offense has been convicted of a felony or has been released from imprisonment for a felony. K.S.A. 21-4202. Unlawful use of weapons includes knowingly possessing a dangerous knife, other than an ordinary pocket knife with a blade 4 inches or less in length, with the intent to use the knife unlawfully against another. K.S.A. 21-4201(b). Unlawful use of weapons is a lesser included offense of aggravated weapons violation.

The evidence at trial was that Sanders was convicted of or released from imprisonment for a felony within 5 years before this offense. His parole officer testified that Sanders was placed under his supervision in October 1992, which was 4 months before Latonya's murder. According to a journal entry, Sanders was on parole for two convictions of kidnapping and two convictions of aggravated robbery, all felony offenses. The journal entry admitted at trial was not included in the record on appeal.

Sanders argues that the jury could disbelieve the testimony of the parole officer and the journal entry. He asserts that if the jury did not find that he was convicted of or released from imprisonment for a felony within 5 years of this crime, the jury could have reasonably convicted him of the lesser offense of unlawful use of weapons.

The parole officer's testimony and the journal entry established the facts necessary to convict the defendant of aggravated weapons violation. That evidence was uncontroverted. Under the facts, no instruction on unlawful use of weapons was required. The trial court did not err in refusing to instruct the jury on the lesser offense of unlawful use of weapons.

## HEARSAY STATEMENTS

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the

right to be confronted with the witnesses against him or her. This constitutional provision, however, does not preclude the admission of all out-of-court statements. In *State v. Johnson-Howell*, 255 Kan. 928, 881 P.2d 1288 (1994), we noted that the courts should attempt to harmonize the goal of the Confrontation Clause—placing limits on the kind of evidence that may be received against a defendant—with a societal interest in accurate factfinding, an effort which may require consideration of out-of-court statements. When the unavailability of a witness becomes an issue, whether the witness is unavailable is a question of law. To obtain admission of out-of-court statements, the State must either produce the witness or demonstrate that the witness is unavailable, and the court must find that the out-of-court statements bear sufficient indicia of reliability or show particularized guarantees of trustworthiness.

The admission or exclusion of relevant evidence in a criminal case is governed by two rules, the harmless error rule and the federal constitutional error rule. K.S.A. 60-261 sets out the harmless error rule. Error in the admission or exclusion of evidence by the court is not grounds for granting a new trial or setting aside a verdict unless refusal to take such action appears to the court inconsistent with substantial justice. At every stage of the proceeding, the court must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. When reviewing the erroneous admission or exclusion of evidence, the error is harmless if no substantial right of the defendant is involved.

Error in the admission or exclusion of evidence in violation of a constitutional or statutory right of a party is governed by the federal constitutional error rule. An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that the error is harmless. Before an appellate court may declare such an error harmless, the court must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. Where the evidence of guilt is of such direct and overwhelming nature that it can be said that evidence erroneously admitted or excluded in violation of a constitutional or statutory right could not have affected the result of the trial, such admission or exclusion is

harmless. See *State v. Thompson*, 221 Kan. 176, 183, 558 P.2d 93 (1976).

Sanders asserts that the trial court erred in admitting Latonya's out-of-court statements to her husband, Otha, and sister-in-law, Pam, that Sanders was making sexual advances toward her. Otha testified that Latonya told him Sanders had been making sexual advances toward her. Pam testified that 2 days before Latonya's death, Latonya told Pam that she told Sanders not to come over to her house anymore because he had approached her as being his "woman." Latonya told Pam that she had informed Otha of Sanders' statement and that Otha told her to tell Sanders he was not welcome at their house.

Sanders argues that the hearsay statements were offered to prove the truth of the matter and do not satisfy a hearsay exception to K.S.A. 60-460, nor were they admissible as part of the res gestae. He asserts specifically that Latonya's statements do not satisfy the hearsay exceptions found in K.S.A. 60-460(d) but makes no analysis of the res gestae issue independent of K.S.A. 60-460(d).

The trial judge admitted Latonya's statements to Otha and Pam as an exception to the rule against admission of hearsay statements and as part of the res gestae. In admitting the statements as part of the res gestae, the court noted that Latonya's statements were made near the time of the crime. The statements showed the relationship of Latonya and Sanders; provided a motive; and indicated the opportunity, intent, and identity of the person who committed the murder. As to whether the statements were admissible hearsay, the judge applied the three part evaluation set forth in K.S.A. 60-460(d) and in *State v. Peterson*, 236 Kan. 821, 830, 696 P.2d 387 (1985). The judge noted that (1) the statements were recent in time; (2) the declarant was under stress at the time that the statements were being made; and (3) the statements were made while the declarant's recollection was clear, they were made in good faith, and there was no indication of intent by the declarant to falsify or distort the statements.

Res gestae and the hearsay exception of K.S.A. 60-460(d) are separate avenues by which evidence may be admitted; both avenues need not be satisfied for the evidence to be admissible. Hear-

say evidence may be admitted if it satisfies a hearsay exception found in K.S.A. 60-460, whether or not it is part of the res gestae, if it is relevant evidence.

K.S.A. 60-460(d) provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

. . . .

"(d) *Contemporaneous statements and statements admissible on ground of necessity generally.* A statement which the judge finds was made (1) while the declarant was perceiving the event or condition which the statement narrates, describes or explains, (2) while the declarant was under the stress of a nervous excitement caused by such perception or (3) if the declarant is unavailable as a witness, by the declarant at a time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort."

Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence. K.S.A. 60-460 makes all hearsay, even though relevant to the issue, inadmissible except to the extent that it is admissible by an exception found in that statute. The exceptions found in 60-460 allow the admission of relevant hearsay statements which have probative value and are the best evidence available. The trial court is given considerable latitude in determining whether statements satisfy the hearsay exceptions of K.S.A. 60-460(d). *State v. Stafford,* 255 Kan. 807, 810, 878 P.2d 820 (1994); *State v. Hobson,* 234 Kan. 133, 158, 671 P.2d 1365 (1983).

The exception stated in 60-460(d)(1) requires that the out-of-court statement be made while the declarant is perceiving the event or condition. There is no evidence that Latonya's statements to Otha and Pam concerning Sanders' sexual advances were made while she was perceiving the advances. K.S.A. 60-460(d)(1) is not satisfied.

The trial court opined that the nature of Latonya's statements showed that she was under stress at the time the statements were made. This goes to the exception found at 60-460(d)(2), which requires that the statement be made while the declarant is under

the stress of a nervous excitement caused by the perception and is normally referred to as the "excited utterance" exception. To fulfill this exception, the perception must have been startlingly sufficient to cause nervous excitement, and the declaration must be made while under the stress of that nervous excitement. See *State v. Rowe*, 252 Kan. 243, 250, 834 P.2d 714 (1992). Here, there is no evidence concerning the nature of Sanders' sexual advances. Without more, the perception of a sexual advance is not sufficient to show nervous excitement. *Cf. State v. Rainey*, 233 Kan. 13, 16-17, 660 P.2d 544 (1983). Moreover, because there is no evidence when the sexual advances occurred, it cannot be said that Latonya's statements were made while she was under the stress of the perception. K.S.A. 60-460(d)(2) is not satisfied.

The trial court also indicated that Latonya's statements were made when the event had been recently perceived by her, while her recollection was clear, and with no indication of any intent to falsify or distort. The hearsay exception found at K.S.A. 60-460(d)(3) requires several conditions to be satisfied: (1) The declarant is unavailable as a witness; (2) the statement was made at a time when the matter was recently perceived and while the declarant's recollection was clear; and (3) the statement was made in good faith prior to the commencement of the action and with no incentive to falsify or distort. Here, Latonya was unavailable as a witness because she was deceased. See K.S.A. 60-459(g)(3). The trial court found Latonya's statements were recent in time.

K.S.A. 60-460(d)(3) also requires that the statements be made in good faith, prior to the commencement of the action, and with no incentive to falsify or distort. Latonya's statements were made prior to the commencement of this action. The presence or absence of an incentive to falsify or distort under K.S.A. 60-460(d)(3) is a question to be determined by the trial judge in light of all the circumstances. *State v. Stafford*, 255 Kan. 807, Syl. ¶ 1. In determining that Latonya's statements did not indicate an intent to distort, the trial court looked at the statements and other circumstances. An appellate court is in no better position than the trial court to decide whether Latonya had any incentive to distort or falsify her statements, nor should an appellate court second-guess

the trial court's decision. See *Rowe*, 252 Kan. at 251. The statements were admissible under the exception stated in K.S.A. 60-460(d)(3).

The trial court also opined that Latonya's statements were admissible as part of the res gestae because the statements occurred near the time of the crime; showed the relationship of the parties; and may have indicated motive, opportunity, intent, or identity. The trial court pointed out that an unwanted sexual advance showed the relationship of the parties. This, however, is not the test for res gestae. Nor is the test whether the evidence would show motive, opportunity, intent, or identity. Prior to making this determination the trial judge must first determine whether the evidence constitutes part of the res gestae. If it does, the evidence may be admitted if it is relevant to show the relationship of the parties or the defendant's motive, opportunity, intent, or identity.

In *Peterson*, 236 Kan. 821, this court analyzed res gestae and hearsay exceptions. The *Peterson* court noted that prior to the adoption of the Code of Civil Procedure, Kansas courts spoke of res gestae as one of the exceptions to the prohibition against the introduction of hearsay into evidence. The res gestae exception to the admissibility of hearsay dealt with declarations made before, during, or after the happening of the principal occurrence. These declarations were admissible as part of the res gestae where the declarations were so closely connected with the principal occurrence as to form in reality a part of the occurrence. The adoption of 60-460(d) replaced a portion of the res gestae exception with the contemporaneous statement exception to the hearsay rule. 236 Kan. at 829-30.

The *Peterson* court observed that res gestae is a broader concept than an exception to the hearsay rule set out in 60-460(d). Res gestae actually deals with admissibility of evidence of acts done as well as declarations made before, during, or after the occurrence of the principal event. Evidence of acts done or declarations made before, during, or after the happening of the principal occurrence may be admitted as part of the res gestae where those acts or declarations are so closely connected with the principal occurrence as to form in reality a part of the occurrence. *State v. Sherry*, 233

Kan. 920, 667 P.2d 367 (1983). Res gestae includes those circumstances or acts which are automatic and undesigned incidents of the particular litigated act and which may be separated from the particular act by lapse of time but are illustrative of that act. It is the whole of the transaction under investigation or being litigated. Acts done or declarations made before, during, or after the principal occurrence admissible as part of the res gestae may show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. *Peterson*, 236 Kan. at 829.

Declarations made before the happening of the principal occurrence may be admissible as part of the res gestae where the declarations are so closely connected with the principal occurrence as to form in reality a part of the occurrence. See *State v. Gadelkarim*, 256 Kan. 671, 688, 887 P.2d 88 (1994); *Peterson*, 236 Kan. at 829; *Sherry*, 233 Kan. 920. Res gestae evidence is evidence which, though not constituting a part of the crimes charged, has a natural, necessary, or logical connection to the crime. *Gadelkarim*, 256 Kan. at 687.

Wide latitude is given to the trial court in determining whether evidence constitutes part of the res gestae. See *Gadelkarim*, 256 Kan. at 687. The trial court did not err in admitting into evidence Latonya's out-of-court statements concerning the defendant's sexual advances as part of the res gestae.

Reversed and remanded for a new trial.

SIX, J., concurring: I concur in the result but write separately because of the majority's discussion of res gestae and hearsay in the concluding portion of the opinion.

K.S.A. 60-460 defines "hearsay" as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated . . . ."

Earlier in the majority opinion we affirmed the trial court's reasoning that Latonya's statements were admissible under the hearsay exception in K.S.A. 60-460(d)(3) (Latonya was dead and thus unavailable as a witness). I would end the opinion at this point, although the trial court "also opined that Latonya's statements were admissible as part of the res gestae."

My concern is that the latter portion of the majority opinion may be construed to suggest that hearsay evidence, which is not admissible under a hearsay exception, may be admitted if it also qualifies as res gestae. Such a construction would create a new exception to the hearsay rule not contained in K.S.A. 60-460(d), *i.e.*, hearsay testimony that is res gestae but fails to satisfy the tests of 60-460(d). I am not aware of any of our cases supporting such reasoning. The only time res gestae evidence should be admitted other than under a hearsay exception is if it is non-hearsay.

The latter portion of the majority opinion references three cases: *State v. Gadelkarim*, 256 Kan. 671, 887 P.2d 88 (1994); *State v. Peterson*, 236 Kan. 821, 696 P.2d 387 (1985); and *State v. Sherry*, 233 Kan. 920, 667 P.2d 367 (1983). None of these cases supports the proposition that hearsay evidence which is not admissible under a hearsay exception may be admitted if it also qualifies as res gestae.

Two of these cases involved hearsay evidence which was admissible under a hearsay exception: *Peterson*, 236 Kan. at 830-31 (the declarant was dead and thus unavailable as a witness, K.S.A. 60-460[d][3]); and *Gadelkarim*, 256 Kan. at 688 (the declarant was dead and thus unavailable as a witness). *Gadelkarim* did not address whether the questioned statements were admissible as part of the res gestae outside the hearsay exceptions of K.S.A. 60-460(d)(3). The trial court denied a motion in limine to exclude the statements. We affirmed. 256 Kan. at 689.

The third case, *Sherry*, involved a res gestae declaration that was not hearsay. The statement "here's the stuff [cocaine]" was made by Sherry to Detective Garcia, who testified to that statement at Sherry's preliminary hearing. 233 Kan. at 932-33.