No. 97,183

STATE OF KANSAS, *Appellee*, v. WILLIAM SCAIFE, *Appellant*.
(186 P.3d 755)

Opinion filed July 3, 2008.

*Janine Cox*, of Kansas Appellate Defender Office, argued the cause and was on the brief for the appellant.

*Edmond D. Brancart*, deputy district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Paul J. Morrison*, attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

JOHNSON, J.: William Scaife appeals his convictions and sentences for premeditated first-degree murder, attempted premeditated first-degree murder, aggravated robbery, and fleeing or attempting to elude a police officer. Scaife argues that (1) the trial court should have instructed on second-degree murder, as requested by counsel; (2) the evidence was insufficient to support the premeditated first-degree murder conviction; (3) in closing argument, the prosecutor improperly vouched for the credibility of the State's prime witness; (4) the sentencing court failed to consider Scaife's ability to pay when ordering the reimbursement of attorney fees to the State Board of Indigents' Defense Services (BIDS); (5) the sentencing journal entry did not comport with the sentencing court's pronouncement from the bench with respect to the BIDS application fee; and (6) the sentencing court erred in imposing a higher sentence based upon a criminal history which

was not proved to the jury beyond a reasonable doubt. Finding sufficient evidence to support the premeditation element of first-degree murder but an erroneous denial of the requested second-degree murder instruction, we reverse the premeditated first-degree murder conviction and remand for a new trial. The remaining convictions and sentences are affirmed, except for the assessment of BIDS attorney fees, which is vacated and remanded.

The charges against Scaife arose from a shooting and robbery in a Kansas City residence from which Patrick Ross and William Thompson had conducted a high volume of drug sales and in which the two, and sometimes others, frequently consumed their merchandise. The residence was equipped with video monitoring and was secured against unwanted intrusions. Scaife had recently returned to the Kansas City area and gained entrance into the residence as a prior acquaintance of Ross.

On the night of the shooting, Ross, Thompson, and Scaife were lounging in the residence, smoking marijuana. Shortly after midnight, the three were watching television, with Thompson lying on a futon mattress on the floor and Scaife seated a few feet behind the futon. According to Ross, Scaife suddenly and without warning shot Thompson in the head three times and then rose from his seat and shot Ross four times. Scaife said nothing immediately prior to or during the shooting spree.

Ross pretended to be dead but was able to observe Scaife's movements through squinted eyes. He said that Scaife took everything from Thompson's pockets, including a gun and marijuana. Scaife then lifted Ross by the waist of his pants and took Ross' wallet, as well as taking drugs that were lying on the living room table. Ross heard Scaife move through the house, apparently trying to find a way out. He heard glass breaking in the kitchen and assumed that Scaife had broken the kitchen window and jumped from the second-story window to escape. Later, police found a black gun holster and some money beneath that broken kitchen window.

After Scaife left, Ross called 911 and reported the shooting. Ross told the dispatcher that he thought he was dying and wanted someone to know that Scaife had shot Thompson and him. Ross testified

at trial and identified Scaife as the shooter and as the person who robbed them of money, guns, and drugs.

Law enforcement officers testified as to two subsequent incidents in which Scaife fled when an officer attempted to detain him. That activity formed the basis for the fleeing or eluding conviction which is not directly involved in this appeal.

## SUFFICIENCY OF THE EVIDENCE

We take the liberty of first considering Scaife's challenge to the sufficiency of the evidence to support the premeditated murder and attempted premeditated murder convictions. Specifically, Scaife contends that the State did not prove the critical element of premeditation. See K.S.A. 21-3401(a).

"When the sufficiency of the evidence is reviewed in a criminal case, this court must consider all of the evidence, viewed in a light most favorable to the prosecution, and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Parker*, 282 Kan. 584, 597, 147 P.3d 115 (2006).

The district court's elements instruction on first-degree murder included the following definition of premeditation:

"Premeditation means to have thought over the matter beforehand, in other words, to have formed the design or intent to kill before the act. Although there is no specific time period required for premeditation, the concept of premeditation requires more than the instantaneous, intentional act of taking another's life."

That instruction contains language drawn directly from our opinions. See *State v. Martis*, 277 Kan. 267, 301, 83 P.3d 1216 (2004) (quoting *State v. Hebert*, 277 Kan. 61, 88, 82 P.3d 470 [2004]).

Scaife points to Ross' testimony that all was well with the group when Scaife suddenly and inexplicably started shooting. Scaife contends that Ross' testimony describes an instantaneous act, rather than a premeditated act.

Premeditation and deliberation may be inferred from the established circumstances of a case, provided the inference is a reasonable one. *State v. Morton*, 283 Kan. 464, 475, 153 P.3d 532 (2007). Prior cases have listed factors to consider when determining the question of premeditation: (1) the nature of the weapon used; (2) lack of provocation; (3) the defendant's conduct before and after

the killing; (4) threats and declarations of the defendant before and during the occurrence; and (5) the dealing of lethal blows after the deceased was felled and rendered helpless. See *State v. Oliver*, 280 Kan. 681, 704, 124 P.3d 493 (2005), *cert. denied* 547 U.S. 1183 (2006).

In reviewing the factors, Scaife argues that Ross' description of the lack of provocation, the defendant's conduct before and after the shooting, and the absence of any threats or declarations by the defendant before or during the occurrence logically support an inference that the act was spontaneous and unplanned, rather than premeditated. He discounts the use of a deadly weapon because all of the occupants of the drug house were armed and notes that the shots were fired in rapid succession, rather than being administered after the victims were felled and helpless.

Thus, because Scaife believes the more reasonable inference to be drawn from the evidence is spontaneity, rather than premeditation, he concludes that the evidence was insufficient to support the premeditated first-degree murder conviction. However, that is not our standard; we do not weigh the evidence. *State v. Beard*, 273 Kan. 789, Syl. ¶ 5, 46 P.3d 1185 (2002) (it is not the appellate court's function to weigh the evidence).

The State takes the same circumstances and provides a credible explanation as to how a reasonable person could infer that Scaife's actions were pursuant to a previously devised plan to kill and rob the victims. Scaife gained the victims' confidence, waited until the three were alone in the house, and then, without provocation, used a concealed firearm to fire multiple rounds into both victims, before robbing them and leaving them for dead so that they would be unavailable to identify their attacker.

However, our function in reviewing evidence sufficiency is not to select the inference which we find most compelling, but to view the evidence in a light most favorable to the prosecution. We permit a factfinder to infer the existence of a material fact from circumstantial evidence, even though the evidence does not exclude every other reasonable conclusion or inference. *Yount v. Deibert*, 282 Kan. 619, Syl. ¶ 1, 147 P.3d 1065 (2006). Moreover, a conviction of even the gravest offense may be sustained by circumstantial

evidence. *State v. Lopez*, 36 Kan. App. 2d 723, 725, 143 P.3d 695 (2006). Here, we hold that one of the reasonable conclusions or inferences the jury could have drawn from the circumstantial evidence was that Scaife had thought the matter over beforehand and that his intent to kill Thompson and Ross was premeditated.

## LESSER INCLUDED OFFENSE INSTRUCTION ON SECOND-DEGREE MURDER

In a factually related issue, Scaife complains that the district court erred in refusing to give an instruction on second-degree murder, K.S.A. 21-3402, with respect to the killing of Thompson. The State had filed the charges as first-degree murder on the alternative theories of premeditation and felony murder. The trial judge determined that a lesser included offense instruction was not warranted because the State filed a felony-murder charge and the evidence of the underlying felony was neither weak nor inconclusive. See *State v. Boyd*, 281 Kan. 70, 90, 127 P.3d 998 (2006) (trial court required to instruct on lesser included offenses of felony murder only when the evidence of the underlying felony is weak, inconclusive, or conflicting). The district court did note that if the sole charge in the complaint had been premeditated first-degree murder, a lesser included instruction on second-degree murder would have been appropriate. See K.S.A. 22-3414(3).

We need not discuss whether lesser included instructions were appropriate on the alternative theory of felony murder. The complaint charged and the jury found Scaife guilty of premeditated first-degree murder. In a prosecution for premeditated first-degree murder, where there is no direct evidence as to the circumstances of the killing and the evidence introduced against the defendant is wholly circumstantial and open to an inference by the jury that the offense committed may have been second-degree murder, it is the duty of the court to instruct the jury respecting that lesser degree of homicide. *State v. Sanders*, 258 Kan. 409, 416, 904 P.2d 951 (1995).

More recently, in *State v. Jones*, 279 Kan. 395, 406-07, 109 P.3d 1158 (2005), this court clarified and simplified the analysis for determining when a trial judge must give a requested second-degree

murder instruction as a lesser-included offense of premeditated first-degree murder, as that primary crime of first-degree murder is currently defined by statute. The unanimous decision in *Jones* instructed:

"In short, [the defendant] has a right to an instruction on second-degree intentional murder as long as the evidence, when viewed in the light most favorable to [the defendant], would reasonably justify a jury's conviction on the offense, and the evidence does not exclude a theory of guilt on [second-degree murder]." 279 Kan. at 401.

Direct evidence is such evidence which, if believed, proves the existence of a fact without inference or presumption, as for example the testimony of an eyewitness as to what he or she actually saw, heard, or touched. See *State v. Corbett*, 281 Kan. 294, 309, 130 P.3d 1179 (2006). The State suggests that Ross' eyewitness testimony provided direct evidence of premeditation. However, nothing that Ross saw or heard directly proves the fact which is in issue, *i.e.*, premeditation. One must take the additional step of drawing inferences from the eyewitness' description of what Scaife did and said (or did not say) to speculate as to what Scaife must have been thinking and how long he had been thinking it before pulling the trigger.

Although admittedly infrequent, direct evidence of premeditation does exist in some cases. An associate might testify that the defendant shared his or her plans to kill the victim or a cellmate might relate how the defendant bragged about his or her daring deed. Sometimes, a defendant will have previously threatened to kill the particular victim. A shooter might declare, immediately prior to pulling the trigger, "This is for cheating me out of my money (or drugs)." However, we need not quibble about whether direct evidence of premeditation can ever exist. Suffice it to say that in this case, there was no direct evidence of premeditation.

Nevertheless, premeditation may be, and is most often, proved by circumstantial evidence. As we determined above, the circumstances of this case could be sufficient to prove premeditation. On the other hand, Scaife's sudden, unprovoked, and inexplicable shooting of Thompson, performed without uttering a word, could indicate to a rational jury that the killing was nothing more than

an instantaneous, intentional act. Under the *Jones* test, the evidence was sufficient to support a second-degree murder conviction and, even viewing the evidence in a light most favorable to the State, the circumstances did not exclude a theory of guilt on second-degree murder.

The State argues that a lesser included offense instruction is not required where the circumstantial evidence in a case provides a strong inference of premeditation or where the evidence does not refute premeditation. Granted, one might divine support for such an argument from some of our prior cases. See, *e.g.*, *State v. Boorigie*, 273 Kan. 18, 41 P.3d 764 (2002) (distinguished on its facts in *Jones*, 279 Kan. at 405). Nevertheless, we have consistently said that, when requested by the defendant, " ' "the trial court has a duty to instruct the jury regarding all lesser included crimes that are established by the evidence, regardless of whether the evidence is weak or inconclusive." [Citation omitted.]' " *Boyd*, 281 Kan. at 93 (quoting *State v. Drennan*, 278 Kan. 704, 712, 101 P.3d 1218 [2004]). No argument has been advanced, nor is one readily apparent, for making an exception to that general rule in premeditated first-degree murder cases. Thus, we hold that the perceived strength of the State's evidence to support the primary crime did not, standing alone, preclude the necessity of giving the requested lesser included offense instruction.

Moreover, on its face, the evidence supporting second-degree murder was not weaker or more inconclusive than the evidence supporting the premeditation element of first-degree murder. Indeed, it was essentially the same evidence: a sudden, unprovoked, inexplicable, and silent shooting of a companion, who had trusted Scaife sufficiently to grant him entry into the fortified drug house and with whom Scaife had spent several amicable hours ingesting drugs while both men were armed. The State says that evidence shows that Scaife obviously planned to rob and kill Thompson; Scaife says that evidence shows that he obviously acted instantaneously, without thought over the matter beforehand. Arguably, both characterizations are "speculative scenarios." Likewise, Ross' testimony could be described as "tenuous evidence" of either premeditation or an instantaneous killing.

To reiterate, we are only discussing the killing of Thompson, the first to be shot. On the attempted premeditated first-degree murder charge relating to the subsequent shooting of Ross, for which the evidence of premeditation was arguably stronger, Scaife received a lesser included instruction on attempted second-degree murder. The district court should have followed its first instinct and given the same lesser included offense instruction for the Thompson shooting.

The State makes a practical argument that the giving of lesser included offense instructions where first-degree murder is charged and instructed on the alternative theories of premeditation and felony murder would be too confusing for the jury. One might perceive that any confusion in that circumstance emanates from the curious rule that permits a jury to convict on a combination of the premeditated and felony-murder theories. Nevertheless, while drafting an appropriate jury instruction may require some careful consideration, that fact cannot dictate against giving a criminal defendant the benefit of lesser included offense instructions, *i.e.*, to allow the jury to convict a defendant of the crime actually committed.

Finally, the State makes a cursory reference to harmless error. For the shooting of Ross, the jury was given lesser included offense instructions, including attempted second-degree murder. The jury found Scaife guilty of attempted premeditated first-degree murder. The apparent suggestion is that the jury found premeditation based on the same facts, even when given the choice of attempted second-degree murder. While the argument has some superficial appeal, it runs counter to the principle that each separate crime is to be viewed in isolation, unaffected by the jury's decision on any other charge. Although not given in this case, we have a specific pattern instruction that should be given when multiple counts are charged:

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to

each crime charged must be stated in a verdict form signed by the Presiding Juror." PIK Crim. 3d 68.07.

Accordingly, we find that the district court's refusal to give the requested lesser included offense instruction on second-degree murder for the first shooting requires the reversal of the premeditated first-degree murder conviction and a remand for new trial on that charge. See *Jones*, 279 Kan. at 406-07 (failure to give second-degree murder instruction requires reversal).

## PROSECUTORIAL MISCONDUCT

Scaife contends that the prosecutor committed misconduct in closing argument by vouching for Ross' credibility. Although we have determined a new trial is mandated on the premeditated first-degree murder conviction for the shooting of Thompson, we must nevertheless consider the issue to determine whether Scaife is entitled to a new trial on the remaining convictions.

The first step in the appellate review of a prosecutorial misconduct allegation is to determine whether the prosecutor's comments exceeded the wide latitude afforded to prosecutors in discussing the evidence. See *State v. Albright*, 283 Kan. 418, 428, 153 P.3d 497 (2007). If we determine that the prosecutor's comments were fair argument on the evidence, our inquiry is concluded.

Scaife points to two portions of the State's closing argument. In the first, the prosecutor was commenting on the audiotape recording of Ross' call to 911, stating: "Listen to his voice, listen to his pleading, listen to the manner in which he asked for help. That's how you know that he's telling the truth." During Scaife's closing argument, his defense counsel focused on Ross' credibility or rather lack thereof. Then, in rebuttal argument, the prosecutor responded: "Now, why believe Patrick Ross? Folks, you saw him, you've heard him from the very beginning of this case which was seconds after it began. Evaluate his testimony, evaluate his demeanor, evaluate what he told you, and you don't have any other conclusion."

Generally, a prosecutor may not offer the jury his or her personal opinion as to the credibility of witnesses. See *State v. Elnicki*, 279 Kan. 47, 60, 105 P.3d 1222 (2005). On the other hand, a prosecutor

is free to craft an argument that includes reasonable inferences to be drawn from the evidence. See *State v. Pabst*, 268 Kan. 501, 507, 996 P.2d 321 (2000). That latitude would include explaining to the jury what it should look for in assessing witness credibility, especially when the defense has attacked the credibility of the State's witnesses.

The first portion of the challenged comments draws the jury's attention to the circumstances surrounding Ross' first identification of Scaife as the shooter during his 911 call. It is certainly reasonable to infer that a person making an excited plea for help while believing that death is imminent is less likely to be crafting a scheme to frame someone for the crime. Indeed, if Ross had died and the substance of his 911 call had been presented to the jury by a third person, it would likely have been considered trustworthy enough to survive a hearsay objection, as either an excited utterance, K.S.A. 60-460(d)(2), or a dying declaration, K.S.A. 60-460(e). Here, the jury was allowed to hear the statements firsthand through the audiotape recording, and the prosecutor was permitted to argue those same trustworthiness factors as being pertinent to the defense's credibility challenge.

In the second portion of the closing argument, the prosecutor was answering the defense attack on Ross' credibility by explaining to the jury what it should look at when assessing that credibility. The argument points out that Ross implicated Scaife almost immediately after the shooting and that his story remained constant throughout the case. The prosecutor urged the jury to consider what Ross said and how he said it, *i.e.*, his demeanor. One of the reasons that appellate courts do not assess witness credibility from the cold record is that the ability to observe the declarant is an important factor in determining whether he or she is being truthful. Certainly, the prosecutor should be permitted to explain that facet of the credibility calculus to the jury.

Accordingly, we find that the prosecutor's comments were not a prohibited personal opinion on Ross' credibility. Rather, in context, the statements explained to the jury some of the legitimate factors it could consider in assessing Ross' credibility and argued why the factors present in the current case should lead to a com-

pelling inference of truthfulness. In other words, the comments were fair argument on the evidence and did not constitute prosecutorial misconduct.

## ATTORNEY FEES REIMBURSEMENT

Scaife challenges the sentencing court's ruling that he reimburse BIDS for his attorney fees under K.S.A. 22-4513(b) without first considering his financial resources and the nature of the burden that payment would inflict on him. Resolution of the issue requires us to interpret the applicable statute, which is a question of law subject to unlimited review. *State v. Rogers*, 282 Kan. 218, 222, 144 P.3d 625 (2006).

The State concedes that the district court's failure to make the requisite findings on the record runs counter to our holding in *State v. Robinson*, 281 Kan. 538, 132 P.3d 934 (2006). However, the State attempts to factually distinguish *Robinson* as involving a probation revocation, rather than a direct appeal from sentencing. Our subsequent decision in *State v. Davis*, 283 Kan. 569, 585-86, 158 P.3d 317 (2007), clarifies that the *Robinson* holding was not limited to a probation revocation scenario.

Clearly, the sentencing judge did not comply with the requirements of K.S.A. 22-4513, as explained in *Robinson*. The court merely stated: "The costs in this matter are assessed against the defendant." Therefore, the imposition of attorney fees is vacated, and the matter is remanded for the court to make explicit findings on the record as to Scaife's financial resources and the burden that imposing the attorney fees reimbursement will place on the defendant.

## SENTENCING JOURNAL ENTRY

Scaife complains that the sentencing journal entry includes an order that he pay the BIDS application fee, as set forth in K.S.A. 22-4529, after the judge failed to pronounce that part of the court's judgment at the sentencing hearing. Scaife points out that the issue involves statutory construction, yielding an unlimited review. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

Scaife reminds us of the longstanding rule that a criminal sentence is effective when pronounced from the bench, rather than when the journal entry of sentencing is filed. Further, " '[a] journal entry which imposes a sentence at variance with that pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed.' " *Abasolo v. State*, 284 Kan. 299, 304, 160 P.3d 471 (2007) (quoting *State v. Hegwood*, 256 Kan. 901, 906, 888 P.2d 856 [1995]). Thus, Scaife believes that the sentencing judge's pronouncement that "costs in this matter are assessed against the defendant" was insufficient to be an order for the payment of the BIDS application fee and that the journal entry in his case must be corrected to delete that order.

Sometime after Scaife filed his appellate brief, we filed our opinion in *State v. Hawkins*, 285 Kan. 842, 176 P.3d 174 (2008), in which we distinguished the application fee of K.S.A. 22-4529 from the attorney fees reimbursement of K.S.A. 22-4513. We specifically noted that the time for ordering the payment of the application fee is at the time the defendant applies for appointed counsel, rather than at the time of sentencing. Then, if the ordered fees remain unpaid at sentencing, the court may include the unpaid fee in its sentencing order without making any additional findings. 285 Kan. 842, Syl. ¶¶ 5, 7.

Given that Scaife incurred his obligation to pay the application fee when he applied for appointed counsel, long before sentencing, the court's subsequent assessment of "costs" would include the previously ordered, but unpaid, application fee. Therefore, the journal entry did not deviate from the court's pronouncement with respect to the BIDS application fee, and we need not order that it be corrected.

## CRIMINAL HISTORY

Finally, Scaife argues that the sentencing court violated the principles in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), when it used his prior convictions and juvenile adjudications to increase his sentence beyond the otherwise prescribed statutory maximum without submitting the convictions and adjudications to a jury for proof beyond a reasonable

doubt. As Scaife recognizes, we rejected this argument in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002); see also *State v. Hitt*, 273 Kan. 224, 234-36, 42 P.3d 732 (2002), *cert. denied* 537 U.S. 1104 (2003) (use of prior juvenile adjudications in criminal history score constitutional). Scaife declares that *Ivory* was wrongly decided but offers nothing new or compelling to support that argument. Once again, we decline the invitation to retreat from the holding in *Ivory* and its progeny.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.

ROSEN, J., dissenting: I generally agree with the majority's conclusions, but I respectfully dissent from the majority's finding that the record demonstrates an obligation to instruct the jury regarding second-degree murder.

The difference between first-degree murder and second-degree murder is premeditation. As the majority points out, a jury may reasonably infer premeditation from the circumstances of a case. *State v. Morton*, 283 Kan. 464, 475, 153 P.3d 532 (2007). And I agree with the majority's conclusion that the circumstances of this case could lead the jury to reasonably infer that the crime was premeditated.

I disagree with the majority's conclusion, however, that an instruction on second-degree murder was mandated based on the facts.

The majority cites as a governing principle:

"In a prosecution for premeditated first-degree murder, where there is no direct evidence as to the *circumstances of the killing* and the evidence introduced against the defendant is wholly circumstantial and open to an inference by the jury that the offense committed may have been second-degree murder, it is the duty of the court to instruct the jury respecting that lesser degree of homicide. *State v. Sanders*, 258 Kan. 409, 416, 904 P.2d 951 (1995)," (Emphasis added.) *State v. Scaife*, 286 Kan. at 619.

The majority then defines direct evidence as evidence that, if believed, "proves the existence of a fact without inference or presumption, as for example the testimony of an eyewitness as to what he or she actually saw, heard, or touched. See *State v. Corbett*, 281 Kan. 294, 309, 130 P.3d 1179 (2006)." *Scaife*, 286 Kan. at 620.

Although Ross was an eyewitness who testified in detail about what he actually saw, heard, and experienced before, during, and after the shootings, the majority concludes that his testimony was not direct evidence because it did not prove "what Scaife must have been thinking." 286 Kan. at 620.

Ross testified that Scaife, Thompson, and he had spent much of the day together. The two victims were watching television when, without any preliminary statement of his intentions, Scaife shot Thompson to death and then shot Ross as he attempted to run away. Scaife was seated when he shot Thompson. Ross observed Scaife searching through both Thompson's and Ross' pockets and removing valuables. Ross heard a window break, and other evidence suggested that Scaife left the house through that window.

What is missing, according to the majority, is testimony from Ross proving that Scaife planned the shooting in advance. *State v. Sanders*, 258 Kan. 409, 416, 904 P.2d 951 (1995), does not, however, require direct evidence of the defendant's state of mind; it does require direct evidence of *the circumstances of the killing*. Those circumstances may, as in the present case, constitute the evidence demonstrating the defendant's state of mind. The direct evidence described no provocation. It described no outburst from the defendant. It described a scene in which an individual brought a firearm with him, waited until he was alone with two men who were seated with their backs to him, shot those men repeatedly, robbed those men, and then made an immediate escape from the scene. Premeditation does not require long-range planning but does involve thinking of killing the victim before doing so. *State v. Bedford*, 269 Kan. 315, 328-29, 7 P.3d 224 (2000). The evidence before the jury constituted, in my opinion, ample direct evidence of the circumstances to demonstrate premeditation and to satisfy the *Sanders* requirement.

Our law does not require the prosecution to show what the defendant was thinking; it requires only that the prosecution prove premeditation. There is no reason to distinguish between direct evidence and circumstantial evidence of the defendant's state of mind. This court has previously noted that the probative values of direct and circumstantial evidence are intrinsically similar and

there is no logically sound reason for drawing a distinction as to the weight to be assigned to the two kinds of evidence. *State v. Beard*, 273 Kan. 789, 804-05, 46 P.3d 1185 (2002) (quoting *State v. Sanders*, 272 Kan. 445, Syl. ¶ 4, 33 P.3d 596 [2001]). Indeed, "[i]ntent, a state of mind existing at the time the offense is committed, does not need to be and rarely can be directly proven. It may be established by acts and circumstances and inferences reasonably deducible from evidence of acts and circumstances. See *State v. Wilkins*, 269 Kan. 256, 264-68, 7 P.3d 252 (2000)." *State v. Dixon*, 279 Kan. 563, 604, 112 P.3d 883 (2005).

This court has not in the past required a declaration from the defendant that he is planning on killing someone in order to avoid a lesser homicide charge. *Sanders*, 258 Kan. 409, does not state such a requirement. Furthermore, the requirements for proving premeditation are by statute less rigorous now than they were at the time that *Sanders* was issued; the State need no longer prove that the crime was committed "maliciously, willfully, [and] deliberately." See *Bedford*, 269 Kan. at 327; K.S.A. 21-3401(a). I see no reason for this court to heighten the *Sanders* requirement relating to direct evidence at this time when the legislature has reduced the elements that must be proven for premeditated first-degree murder.

While it is true that a defendant has a right to jury instructions on all lesser included offenses established by the evidence, however weak, unsatisfactory, or inconclusive the evidence may appear to the court, that evidence must be *substantial*. *State v. Lee*, 263 Kan. 97, 99-100, 948 P.2d 641 (1997). Mere "tenuous evidence" supporting an instruction for a lesser crime does not require the trial court to give the jury such an instruction. *State v. Pierce*, 260 Kan. 859, 867, 927 P.2d 929 (1996).

The majority in the present case takes the position that the defendant's silence before the shooting constitutes evidence that he may have been seized by a sudden impulse to shoot his companions multiple times. The defendant's silence is not, however, merely weak, unsatisfactory, or inconclusive evidence of impulsive behavior; it lacks any substance whatsoever. The silence did not support a defense theory of impulse. The defendant never claimed that he

shot the victims on impulse; he claimed he did not shoot the victims.

In *State v. Boorigie*, 273 Kan. 18, 41 P.3d 764 (2002), the defendant requested instructions on second-degree murder and voluntary manslaughter as lesser included offenses of premeditated first-degree murder. To support the lesser included offenses, the defendant pointed to the prosecution's evidence that he had a "quick and violent temper." 273 Kan. at 41. He apparently reasoned that, in the absence of "direct" evidence of premeditation, a jury could conclude that he acted in a sudden fit of temper. The prosecution pointed to the circumstances of the crime, including the length of time required to strangle the victim and the defendant's prior attempts to kill the victim. Rejecting a mandatory second-degree murder instruction, our court concluded that "there was no evidence that the murder . . . was not a premeditated act, perpetrated for the purpose of financial gain." 273 Kan. at 41.

The California Supreme Court addressed a similar situation in *People v. Prince*, 40 Cal. 4th 1179, 57 Cal. Rptr. 3d 543, 156 P.3d 1015 (2007). The defendant argued that evidence of his bad temper and mental disturbance gave rise to the possibility that he had committed murder in an "explosion of violence" or as "afterthoughts," thereby necessitating an instruction on second-degree murder. 40 Cal. 4th at 1266. The California court rejected this contention, noting that the evidence about his volatile state of mind lacked "substantial weight" and the argument against premeditation was based on "speculative scenarios without any evidentiary basis." 40 Cal. 4th at 1266; see also *State v. Lambert*, 341 N.C. 36, 46, 460 S.E.2d 123 (1995) (unless defendant presents some evidence to negate evidence of premeditation, trial court has no duty to instruct on lesser included offense; absence of prior threats and evidence that defendant was intoxicated lacked sufficient weight to require second-degree murder instruction); *cf. State v. Dahlin*, 695 N.W.2d 588, 600-01 (Minn. 2005) (lesser included offense instruction was required where witnesses testified that defendant intended only to intimidate and not to kill victim).

The majority finds compelling in the present case the same kind of speculative scenario that the *Prince* court rejected. In short, the

majority position would require a jury to give weight to ephemeral evidence—or nonevidence—and to apply it to a speculative scenario in order to reach the strained conclusion that this crime was not premeditated. That is not the law in this state, and it should not become the law of this state. I would affirm the premeditated first-degree murder conviction.

MCFARLAND, C.J., and DAVIS, J., join in the foregoing dissent.