NOT DESIGNATED FOR PUBLICATION

No. 113,690

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BYRAN O. WALKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed May 27, 2016. Affirmed.

*Brandon J. Katt*, legal intern, and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Andrew Hamline*, legal intern, *Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ARNOLD-BURGER, J., and BURGESS, S.J.

*Per Curiam*: A jury convicted Byran O. Walker of one count of possession of marijuana and one count of possession of lorazepam. Walker raises two arguments in his direct appeal. First, Walker argues there was insufficient evidence to convict him of possession of marijuana. Specifically, Walker argues that outside of his confession, there was insufficient independent evidence to support his conviction under the common-law corpus delicti rule and Kansas' trustworthiness standard for confessions. Second, Walker argues that the trial court erred by denying his requested jury instruction on lawful

1

possession of lorazepam as an ultimate user. Nevertheless, as detailed below, neither of Walker's arguments are persuasive. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On February 19, 2012, at 3:02 a.m., Officer Timothy King noticed a partially smoked blunt inside a black BMW located in a hotel parking lot. A computer check revealed the BMW belonged to Barbara Brandon. Officer King went inside the hotel, determined that Brandon was a guest, and went to her hotel room. Upon Officer King's request, Brandon allowed him and another police officer inside the room she was sharing with Walker. Officer King searched the hotel room and Brandon's vehicle. During the search of the hotel room, Officer King found a bottle of prescription lorazepam inside a backpack belonging to Walker. During the search of Brandon's vehicle, Officer King found three marijuana blunts, a digital scale, and a handgun. When asked about these items, Walker stated that everything belonged to him.

As a result, Walker was arrested and charged with one count of possession of marijuana with a prior conviction, a severity level 4 drug felony in violation of K.S.A. 2015 Supp. 21-5706(b)(3), one count of felon in possession of a firearm, a severity level 8 nonperson felony in violation of K.S.A. 2015 Supp. 21-6304, and one count of possession of a controlled substance, a class A nonperson misdemeanor in violation of K.S.A. 2015 Supp. 21-5706(b)(4). Walker moved to suppress the evidence obtained from the hotel room, the evidence obtained from the vehicle, and his statements to Officer King. The trial court denied Walker's motions, ruling that Officer King obtained consent to search the hotel and vehicle and that Walker's statements were voluntary.

In October 2014, Walker's jury trial was held. The State presented testimony from a forensic scientist that the pills taken from the bottle located in the backpack were lorazepam and the three blunts located in the vehicle were marijuana blunts.

2

Officer King testified after he saw a partially smoked blunt in Brandon's vehicle and learned she was in fact staying at the hotel, he decided to check out her hotel room. As the officer approached Brandon's hotel room, he could smell a strong odor of burnt marijuana. When Officer King knocked on the hotel door, Brandon answered and allowed him and another officer into the hotel room. As the officers entered the room, Walker exited the bathroom located inside the hotel room. Officer King testified there was an "overwhelming odor of burnt marijuana" inside the hotel room and Walker told the officer that he had just flushed marijuana down the toilet. Brandon gave Officer King consent to search both the hotel room and her vehicle. During the search of the hotel room, Officer King found 37 lorazepam pills inside a prescription pill bottle, which was inside a backpack. Officer King testified Walker initially stated he owned the backpack, but upon the officer's discovery of the lorazepam, Walker then asserted the backpack and the lorazepam belonged to his sister, Keala Betts. The prescription bottle containing the lorazepam had Betts' name on it and was admitted into evidence.

Officer King also testified that during the search of Brandon's vehicle he found three marijuana blunts—one on the front passenger side floor board, one in the glove box, and a partially smoked marijuana blunt in a removable ashtray sitting on top of the center console—and a handgun. When Officer King asked Walker and Brandon about the three marijuana blunts, Walker responded they belonged to him. However, Officer King admitted that he never saw Walker physically holding the marijuana blunts. The three marijuana blunts were admitted into evidence at trial.

Walker testified on his own behalf and stated he was not in Brandon's vehicle the day before or the day of his arrest and that he and Brandon had been running errands together all day around Kansas City but were driving separate vehicles. Walker testified the police officers were very aggressive and threatened Brandon in order to obtain her consent for both the search of the hotel room and her vehicle. Walker admitted he initially told Officer King the backpack belonged to him explaining many of Betts'

3

belongings were still in his house because she had lived with him from the summer of 2011 to about January 1, 2012; and that Betts had also left some of her belongings with him the week prior following their road trip to Arkansas. Walker believed Betts left her prescription lorazepam with him either from when she previously lived with him or from their road trip the week prior. Walker also testified he intended to meet with Betts the following day to return her prescription lorazepam.

Next, Walker testified he did not recall telling Officer King the marijuana blunts belonged to him, but if he had made such a statement, then he did so because he did not want Brandon to go to jail as she was the mother of his children. Walker then testified the marijuana found in the vehicle actually belonged to Brandon. Walker also denied telling Officer King he had flushed marijuana down the toilet. Yet, Walker admitted "marijuana had been smoked" in the hotel room earlier in the evening.

At the jury instruction conference, Walker argued the jury should be given the following instruction:

> "The ultimate user or person in possession of Loprazepam [*sic*] (commonly referred to as Ativan) pursuant to a lawful order of a practitioner may 'lawfully possess' Lorazepam. An Ultimate User is defined as a person who lawfully possess[es] a controlled substance for such person's own use or the use of a member of such person's household."

The trial court denied Walker's request stating that the "Court is not going to give this instruction" but would "allow the parties to argue possession as [they] wish[ed]." Because the trial court found the State failed to present evidence Walker possessed marijuana inside the hotel room, the trial court did modify the jury instruction concerning possession of marijuana to read Walker "possessed the marijuana in the black BMW."

4

The jury found Walker not guilty of a felon in possession of a firearm but found him guilty of possessing marijuana and lorazepam.

Following his convictions, Walker moved for a new trial, asserting the trial court had erred by denying his request for a jury instruction regarding the lawful possession of lorazepam as an ultimate user. Walker also moved for a durational departure, requesting the trial court sentence him to a total of 12 months' imprisonment. The trial court denied Walker's motion for new trial, standing by its original ruling. The trial court, however, granted Walker's departure motion in part, sentencing Walker to a total of 20 months' imprisonment followed by 12 months' postrelease supervision.

Walker timely appealed.

### WAS THERE SUFFICIENT EVIDENCE TO SUPPORT WALKER'S CONVICTION FOR POSSESSION OF MARIJUANA?

When a defendant challenges the sufficiency of the evidence, an appellate court reviews all the evidence in the light most favorable to the State. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). So long as a rational factfinder could have found the defendant guilty beyond a reasonable doubt, an appellate court will uphold the defendant's conviction. 299 Kan. at 525. Thus, it is only in the rarest cases where the testimony is so incredible that no reasonable factfinder could find the defendant guilty beyond a reasonable doubt that the verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983). In making this determination, this court will not reweigh the evidence or the credibility of witnesses. *Williams*, 299 Kan. at 525.

Moreover, a defendant can be convicted of even the most serious offense based entirely on circumstantial evidence. *State v. Brooks*, 298 Kan. 672, 689, 317 P.3d 54 (2014). A factfinder may "infer the existence of a material fact from circumstantial

5

evidence, even though the evidence does not exclude every other reasonable conclusion or inference." *State v. Scaife*, 286 Kan. 614, 618, 186 P.3d 755 (2008).

On appeal, Walker argues that outside of his confession the marijuana found inside the vehicle belonged to him, no independent evidence supported he was guilty of possessing marijuana. Accordingly, Walker asserts there was insufficient evidence to support his conviction of possessing marijuana under the common-law formal corpus delicti rule. Walker additionally asserts that his confession was not sufficiently trustworthy to support his conviction under our Supreme Court's trustworthiness standard set out in *State v. Dern*, 303 Kan. 384, 362 P.3d 566 (2015). Because Walker believes there was insufficient evidence to support his possession of marijuana conviction based on the formal corpus delicti rule and Kansas' trustworthiness standard, he asks this court to reverse his conviction. Nevertheless, Walker fails to establish that he is entitled to relief.

In order to address Walker's arguments, it is first necessary to review the corpus delicti rule. "Corpus delicti is Latin for 'body of the crime.' It refers to the basic injury in a crime, such as the death in a murder, and a showing that this injury resulted from criminal activity." *Dern*, 303 Kan. 384, Syl. ¶ 5. As set out by our Supreme Court in *Dern*, "the corpus delicti rule's purpose is commonly summarized as: (1) a protection against convicting defendants of imaginary crimes; (2) a means to avoid reliance on false confessions; and (3) a means to promote better police investigations by ensuring that they extend beyond the words of the accused. [Citation omitted.]" 303 Kan. at 401. The majority of the corpus delicti rule cases focus on the second factor concerning false confessions. As such, the formal corpus delicti rule prevents convictions based on extrajudicial admissions or confessions unless there is additional and independent evidence supporting that the crime occurred. 303 Kan. at 401-02.

6

As detailed in *Dern*, however, because there are several problems regarding the rigidity of the formal corpus delicti rule, many jurisdictions, including Kansas, have adopted the trustworthiness standard. 303 Kan. at 401-11. The trustworthiness standard "provide[s] an alternative path for the State to take when making its prima facie showing of the alleged crime's corpus delicti when the nature and circumstances of that crime are such that it did not produce a tangible injury." 303 Kan. at 410. Under the trustworthiness standard: "That alternative route is a trustworthy confession or admission to crimes that do not naturally or obviously produce a tangible injury easily susceptible to physical proof." 303 Kan. at 410. This means if independent evidence establishing the corpus delicti does not exist, an appellate court may still uphold a defendant's conviction so long as some evidence bolsters the validity of the confession itself. 303 Kan. at 410.

To determine if a confession is trustworthy, a court must look to the totality of the circumstances and may also consider the following nonexclusive factors or indicia of reliability:

> "(1) independent corroboration of details or specific facts contained in the confession; (2) the number of times the confession was made and the consistency or lack thereof between different versions of the confession; (3) the circumstances of the confession, including the identity of the person or persons to whom the confession was made and the state of mind of the defendant at the time of the confession; (4) the availability of the facts or details contained in the confession from sources outside the defendant's personal knowledge; (5) the defendant's age, education, experience, and mental health; and, (6) if the confession was made to law enforcement, then the overall fairness of the exchange including whether there was deception, trickery, undue pressure, or excessive length."
> 303 Kan. at 410-11.

Yet, it is important to note that a court need not analyze a defendant's confession under Kansas' trustworthiness standard if additional and independent evidence establishes the

7

corpus delicti outside of the confession under the formal rule. See 303 Kan. 384, Syl. ¶ 6, 409-10.

Here, without explanation, Walker asserts that the "[S]tate's only proof of [his] alleged possession of marijuana found in Ms. Brandon's vehicle was his confession, making this case subject to the corpus delicti rule." Walker emphasizes that he only stated the marijuana belonged to him after Officer King told Walker he found the marijuana blunts while searching Brandon's vehicle. Walker further asserts he "simply agreed to the officer's inventory of items found in the car."

Regardless, this assertion ignores that Officer King recovered three marijuana blunts from the vehicle. Thus, in this case, physical evidence supporting that someone committed the crime of possessing marijuana existed. Because this evidence existed, the State produced tangible evidence outside of Walker's confession supporting there was an injury resulting from criminal activity, *i.e.*, illegal possession of marijuana. Again, this is all that is necessary under the formal corpus delicti rule. See 303 Kan. 384, Syl. ¶¶ 5-6, 401-02. Accordingly, the State presented additional and independent evidence outside of Walker's confession proving that the crime of possession of marijuana occurred. As a result, Walker's argument fails.

Furthermore, Walker's argument fails because the State also presented circumstantial evidence supporting Walker was the person who committed the crime. Again, the State presented the following evidence: (1) that Walker and Brandon were together all day running errands with one another; (2) that Walker testified that "marijuana had been smoked" within the hotel room he was sharing with Brandon; and (3) that Walker told Officer King he had just flushed an unknown amount of marijuana down the toilet in the hotel room he was sharing with Brandon. To be convicted of possessing marijuana, the State need only prove that a defendant had joint control over the marijuana. See *State v. Dean*, 42 Kan. App. 2d 32, 38, 208 P.3d 343 (2009). At trial,

8

the jury was instructed that possession means "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in place where the person has some measure of access and right of control." See PIK Crim. 4th 57.040.

Because the State presented evidence Walker and Brandon were together all day and were smoking marijuana together inside their hotel room, a jury could reasonably infer that Brandon individually or jointly possessed the marijuana blunts located inside the vehicle belonging to Brandon. More importantly, this circumstantial evidence undermines Walker's argument that nothing outside of his confession supported he possessed the marijuana blunts found inside Brandon's vehicle.

Despite the preceding evidence, in his brief, Walker stresses that the vehicle belonged to Brandon. Therefore, nothing tied him to the marijuana outside of his statement. Nevertheless, this argument is problematic for three reasons.

First, as previously detailed, the mere existence of the three marijuana blunts establishes the corpus delicti of possession of marijuana. Second, the circumstantial evidence tying Walker to the marijuana in Brandon's vehicle supports that Walker possessed the marijuana. Moreover, the circumstantial evidence constitutes additional independent evidence supporting Walker committed the crime outside of his confession. Third, the only evidence supporting Walker had not been inside Brandon's vehicle that evening was his own testimony. A jury is "not bound to accept any one witness' version of the facts." *State v. Kettler*, 299 Kan. 448, 471-72, 325 P.3d 1075 (2014). As evidenced by the fact the jury found Walker guilty of possessing the marijuana, the jury made a credibility determination that Walker lied about not possessing the marijuana located in Brandon's vehicle. Therefore, Walker's argument necessarily fails because this court must accept the jury's credibility determination against Walker. See *Williams*, 299 Kan. at 525.

9

In summary, although Walker argues there was insufficient evidence to support his marijuana possession conviction under both the formal corpus delicti rule and under Kansas' trustworthiness standard, additional and independent evidence supports that he illegally possessed the marijuana seized from Brandon's vehicle. Thus, Walker fails to establish that he is entitled to relief even under the formal corpus delicti rule. In turn, whether Walker's confession survives Kansas' trustworthiness standard is irrelevant. Walker's arguments are unpersuasive.

### DID THE TRIAL COURT ERR BY DENYING WALKER'S REQUEST FOR A JURY INSTRUCTION ON LAWFUL POSSESSION AS AN ULTIMATE USER?

Walker argues that he was entitled to a jury instruction on lawful possession of the lorazepam as an "ultimate user." When a defendant challenges a jury instruction, this court must consider the following:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

If the defendant has presented sufficient evidence regarding a specific theory, that defendant is entitled to an instruction on that theory. *State v. Hilt*, 299 Kan. 176, 184, 322 P.3d 367 (2014). Additionally, appellate courts have unlimited review over questions involving statutory interpretation. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12, *cert. denied* 135 S. Ct. 91 (2014).

Neither Walker nor the State dispute this court's ability to review Walker's argument under the first prong of the jury instruction analysis. Moreover, neither dispute that an ultimate user instruction may be legally appropriate under the second prong of the analysis in certain instances. Instead, the parties' arguments focus on whether the instruction was factually appropriate under the third prong of the analysis.

On appeal, Walker argues he presented evidence that would allow a jury to conclude Betts was part of his household. Because Walker believes he presented evidence he and Betts lived in the same household, he asserts that the trial court was required to give the ultimate user instruction. Walker argues the trial court's error requires reversal of his conviction and remand for a new trial with the proper instruction. Yet, Walker's analysis ignores his own testimony established that Betts was not a member of his household when he was arrested and she had not been a member of that household for an extended period.

Under K.S.A. 2015 Supp. 21-5706(b)(4) and K.S.A. 2015 Supp. 65-4111(b)(29), it is illegal for a person to possess lorazepam without a prescription. Nevertheless, "ultimate users" may lawfully possess controlled substances. See K.S.A. 2015 Supp. 65-4116(c)(3). An ultimate user is "a person who lawfully possesses a controlled substance for such person's own use or *for the use of a member of such person's household . . . .*" (Emphasis added.) K.S.A. 2015 Supp. 65-4101(pp). The term household is not statutorily defined. But, the plain language of the statute indicates that the member must currently be part of a person's household as it includes no language concerning former members of a person's household. Moreover, traditionally household means "[a] domestic establishment including the members of a family and *others who live under the same roof.*" (Emphasis added.) Webster's II, New College Dictionary 536 (1995).

Two recent cases before this court have dealt with the term household in regards to the appropriateness of an ultimate user jury instruction. In *State v. Jaushlin*, No. 104,195,

2011 WL 5833291 (Kan. App. 2011) (unpublished opinion), Jaushlin argued that the trial court erred by failing to give an instruction on lawful possession of hydrocodone as ultimate user because he presented evidence the hydrocodone belonged to his mother and that his mother lived in his household. The *Jaushlin* court agreed, holding that because Jaushlin presented substantial evidence he possessed the hydrocodone pills for his mother, who was a member of his household, the trial court erred by failing to give the instruction. 2011 WL 5833291, at *3-6.

In *State v. Zapata*, No. 110,126, 2014 WL 4916613 (Kan. App. 2014) (unpublished opinion), Zapata argued that the trial court erred by failing to give his requested ultimate user jury instruction. Citing *Jaushlin*, Zapata argued evidence that the bottle of hydrocodone pills found on him belonged to his mother-in-law constituted substantial evidence requiring the ultimate user jury instruction. The *Zapata* court disagreed, explaining that Zapata was not entitled to the ultimate user jury instruction given that he never presented evidence his mother-in-law was a member of his household. 2014 WL 4916613, at *3. The *Zapata* court emphasized that "the evidence was that [his mother-in-law] lived at a different location, left the pills at Zapata's home, and had asked her daughter, Zapata's wife, to return the pills to her." 2014 WL 4916613, at *3. Consequently, the *Zapata* court ruled that Zapata's reliance on *Jaushlin* was misplaced. 2014 WL 4916613, at *3.

Here, the ultimate user jury instruction was not factually appropriate given the evidence Walker presented. At trial, Walker explicitly testified that Betts was not presently living with him. According to Walker, he was going to return the lorazepam to Betts the next day because she had either left the pills with him from when she lived with him or from when she traveled with him to Arkansas. Thus, as in *Zapata*, the evidence presented at trial proved that Betts was not a member of his household. Instead, at best, the evidence supported that Walker was holding on to the pills for his sister until she could retrieve her pills. Therefore, under the plain language of K.S.A. 2015 Supp. 65-

12

4101(pp), Walker did not qualify as an ultimate user. As a result, the trial court did not err when it denied Walker's request for this instruction.

Affirmed.