NOT DESIGNATED FOR PUBLICATION

No. 120,120

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAMIAN MIGEL BATEAST,
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; LORI BOLTON FLEMING, judge. Opinion filed April 24, 2020. Appeal dismissed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Michael Gayoso, Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., HILL and STANDRIDGE, JJ.

PER CURIAM: Following a jury trial, Damian Migel Bateast was convicted of one count of distribution of methamphetamine and sentenced to 49 months in prison. About a year later, Bateast filed a pro se notice of appeal. The notice was filed after the deadline had expired so this court remanded the matter to the district court to decide whether any caselaw exceptions applied to excuse the untimely notice of appeal. After an evidentiary hearing, the district court concluded that none of the exceptions applied to this case. Bateast appeals, claiming that the district court erred in reaching that conclusion. Finding no error, we dismiss this appeal.

1

The district court sentenced Bateast on August 30, 2017. On September 4, 2018, Bateast filed a pro se notice of appeal alleging various errors with his trial and sentencing. He acknowledged that his notice of appeal was filed out of time but argued the appeal still should be allowed to go forward because his trial counsel failed to inform him of his right to an appeal. The appeal was docketed, but a panel of our court issued an order on October 29, 2018, requesting the parties show cause why the appeal should not be dismissed for lack of jurisdiction due to the untimely notice of appeal. After both parties responded to the show cause order, we remanded the matter to the district court for an evidentiary hearing to determine whether any caselaw exceptions applied to excuse the untimely notice of appeal.

An evidentiary hearing was held on March 19, 2019. Bateast testified that he had multiple discussions with his trial attorney, Robert Myers, about the possibility of an appeal throughout the district court proceedings. But when asked if he had discussed the subject of appealing with Myers after sentencing, Bateast could not remember and instead said, "I think that I wrote Mr. Myers a letter telling him that I wanted to pursue the appeal but I was going to take it upon myself to do it." Bateast then summarized the reasons he wanted to pursue an appeal, most of which tracked with the reasons he listed in his pro se notice of appeal. On cross-examination, Bateast was asked to produce a copy of the letter that he purportedly sent to Myers, but he was unable to do so. Bateast testified that he had not provided the letter to his own appellate counsel either. Bateast also admitted that, in an affidavit he submitted to appellate counsel, he did not mention asking Myers to file an appeal for him and, in fact, did not decide that there were issues that he wanted to appeal until he began doing some research in the summer of 2018.

Myers also testified at the hearing. On direct examination, Myers confirmed that he represented Bateast in a number of criminal cases. Myers said case No. 16 CR 46G

was the first of those cases to go to trial. The jury found Bateast guilty, and Bateast directed him to file a notice of appeal, which he did. The case at issue here was the second case to go to trial. Myers testified that Bateast told him after the guilty verdict in this case that he did not want to file a direct appeal. This struck Myers as odd, particularly because Bateast was pursuing an appeal in the other case. But Myers said Bateast made the decision at the end of the sentencing hearing and after a full discussion of Bateast's appellate rights. Myers confirmed that such a discussion took place by writing "Appeal x NO x" on his copy of Bateast's presentence investigation (PSI) report and having Bateast sign his name next to the notation. Myers provided the court with a copy of the PSI report, with the additional notation and signature, and the court admitted the document into evidence.

On cross-examination, Myers admitted that he did not discuss specific appealable issues with Bateast; instead, he simply had a general discussion with Bateast about his appellate rights. But Myers also said that if he felt or believed there was an issue that needed to be appealed, he "would have said here's an issue that you may want to have addressed or raised to appellate counsel once they're appointed and then have a conversation with him about whether he wishes to appeal or raise any issues on appeal." And Myers specifically remembered that even though Bateast had filed an appeal in the first case, Bateast was adamant that "he did not want to appeal any issues in this one."

Following Myers' testimony, the State rested. Bateast asked to continue the balance of the hearing so that he could have time to look for the letter he purportedly sent to Myers. That request was granted, and the matter was continued to April 26, 2019. Upon reconvening, Bateast reported that he was unable to find the letter. Despite this failure, he testified in rebuttal that he did not have any substantive discussions with Myers about his appellate rights after his sentencing hearing. Bateast also said he could not remember signing the copy of the PSI report that previously was introduced into

3

evidence but then immediately backtracked and said, "[W]hen I did sign the document, I believe I mentioned to [Myers] that I would try to do the appeal on my own."

On April 30, 2019, the district court issued a written ruling denying Bateast's motion to file his appeal out of time. Relevant here, the district court stated:

"Here, the Court finds that Myers specifically asked the Defendant if he wished to appeal. The appealable issue the Defendant complains of had been discussed in both an earlier case, and during his present sentencing. Defendant specifically, and repeatedly, stated he did not wish to appeal, and signed a document indicating his intent. The Court finds Myers' recount of these actions to be credible. There is simply no evidence in the record, other than Defendant's testimony, that supports the idea that Defendant wished to appeal until he decided much later to do so. It is clear that at sentencing, the Defendant was notified of his right to appeal by both the Court and his attorney. In fact, the Defendant conceded that he did not even decide he wanted to appeal until the summer of 2018. Under these facts, as more fully contained in the record, the Defendant is not entitled to relief."

ANALYSIS

On appeal, Bateast argues the district court erred when it determined that he was not entitled to relief under *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982). Appellate courts apply a dual standard when reviewing district court's ruling on whether an *Ortiz* exception applies. *State v. Smith*, 303 Kan. 673, 677, 366 P.3d 226 (2016). "The facts underlying the district court's ruling are reviewed for substantial competent evidence, while the legal conclusion as to whether the exception applies is reviewed de novo." 303 Kan. at 677. Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019).

In Kansas, a criminal defendant's direct appeal must be filed within 14 days of sentencing. See K.S.A. 2019 Supp. 22-3608(c) (establishing 14-day time limitation for crimes committed after July 1, 1993). "The filing of a timely notice of appeal is jurisdictional. Generally, the failure to file a timely notice of appeal requires dismissal of the appeal." *Albright v. State*, 292 Kan. 193, 197, 251 P.3d 52 (2011). But in the interest of fundamental fairness, the Kansas Supreme Court has recognized three exceptions to the dismissal requirement. See *State v. Patton*, 287 Kan. 200, 206, 195 P.3d 753 (2008) (citing *Ortiz*, 230 Kan. at 735-36).

> "The *Ortiz* exceptions recognize that an untimely appeal may be allowed in the direct appeal from a conviction and sentence if a criminal defendant either (1) was not informed of the right to appeal at sentencing or by counsel, (2) was indigent and not furnished counsel to perfect an appeal, or (3) was furnished counsel for that purpose who failed to perfect and complete an appeal." *Albright*, 292 Kan. at 198 (citing *Ortiz*, 230 Kan. at 735-36).

The third *Ortiz* exception applies when an attorney is appointed or retained for an appeal but fails to timely file a notice of that appeal or otherwise protect a defendant's rights, thereby destroying that defendant's right to pursue a direct appeal. See *Patton*, 287 Kan. at 224. As such, the third *Ortiz* exception is part and parcel with an attorney's effectiveness. *State v. Shelly*, 303 Kan. 1027, 1047, 371 P.3d 820 (2016); see also *Patton*, 287 Kan. at 218-19 ("The second and third exceptions—applicable when a defendant was not furnished with an attorney to perfect an appeal or was furnished with an attorney for that purpose who failed to perfect and complete an appeal—go to the right of counsel and effectiveness of counsel."). The standard of performance that is to be applied to measure the adequacy of an attorney's performance under the third *Ortiz* exception is found in *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2016). *Patton*, 287 Kan. 200, Syl. ¶ 10.

"Under the third *Ortiz* exception and *Flores-Ortega*, if appointed or retained counsel has failed to file or perfect a direct appeal by a criminal defendant, the court presumes the existence of prejudice. The defendant must still demonstrate that, but for counsel's failure, he or she would have taken a timely direct appeal. The defendant need not show that such a timely direct appeal would have been successful." 287 Kan. 200, Syl. ¶ 11.

Accordingly, to satisfy the third *Ortiz* exception, "the defendant must establish that: (1) he or she told counsel to appeal, but the attorney failed to file or perfect the appeal; and, (2) he or she would have timely appealed, but for counsel's failure." *State v. Smith*, 304 Kan. 916, Syl. ¶ 4, 377 P.3d 414 (2016).

Specifically citing to *Flores-Ortega*, Bateast claims that Myers' performance was deficient because he had not only had a duty to ask him if he wanted to file an appeal but he also had an affirmative duty to consult with him about the specific advantages and disadvantages of taking an appeal. But Bateast's claim fails to place the *Flores-Ortega* consultation language in its proper context. We do so here.

"*In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken*, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term 'consult' to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." (Emphasis added.) *Flores-Ortega*, 528 U.S. at 478.

6

Applying the legal principles set forth in *Flores-Ortega* to the facts of this case, Bateast has failed to establish the prerequisites for filing an untimely appeal under the third *Ortiz* exception. After hearing all of the evidence, the district court found that Bateast "specifically, and repeatedly, stated he did not wish to appeal, and signed a document indicating his intent." The court's finding of fact is supported by substantial competent evidence in the record: Myers' testimony and the PSI report signed by Bateast indicating he did not want to appeal. In making an assessment of whether there is substantial competent evidence to support a district court's findings, we neither reweigh evidence nor make independent credibility determinations. K.S.A. 2019 Supp. 60-252(a)(5) ("Findings of fact must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witness' credibility."); *State v. Hartpence*, 30 Kan. App. 2d 486, 493, 42 P.3d 1197 (2002). A significant part of evaluating testimony rests on seeing the witnesses on the stand and observing how they respond to questions both on direct and cross-examination. *State v. Scaife*, 286 Kan. 614, 624, 186 P.3d 755 (2008) ("[T]he ability to observe the declarant is an important factor in determining whether he or she is being truthful."); *State v. Franco*, 49 Kan. App. 2d 924, 936, 319 P.3d 551 (2014) ("'The judicial process treats an appearance on the witness stand, with the taking of an oath and the rigor of cross-examination, as perhaps the most discerning crucible for separating honesty and accuracy from mendacity and misstatement.'"). Appellate courts have no comparable vantage point when they read a trial transcript, and that is precisely why they do not make credibility determinations. We will not do so here.

The fact that Bateast affirmatively told Myers that he did *not* want to appeal is important and distinguishes this case from *Flores-Ortega*, where defense counsel did not discuss the issue of an appeal with the defendant at all. Under our case facts, *Flores-Ortega* precludes Bateast's untimely appeal under the third exception of *Ortiz*: "[A] defendant who explicitly tells his [or her] attorney *not* to file an appeal plainly cannot later complain that, by following his [or her] instructions, his [or her] counsel performed

deficiently." 528 U.S. at 477. Accordingly, his appeal is dismissed for lack of jurisdiction.

      Appeal dismissed.